450 So.2d 933 (1984)
TITLE RESEARCH CORPORATION et al.
v.
Lucy Reid RAUSCH, Clerk of Court, St. Tammany Parish, Louisiana.
No. 83-C-1683.
Supreme Court of Louisiana.
April 2, 1984.
*934 Robert C. Brandt, Williams & Brandt, Slidell, La., George R. Blue, Sr., Blue, Williams & Buckley, Metairie, for plaintiff-applicant.
Thomas S. Derveloy, Jr., Jones, Fussell, Derveloy & Schoen, Covington, for defendant-appellee.
DIXON, Chief Justice.
Pursuant to an agreement, Title Research Corporation and Karl Heeter, plaintiffs, were allowed to microfilm the newly filed, original and unbound conveyance and mortgage records of St. Tammany Parish. After nine months, the agreement with the Clerk of Court, Lucy Reid Rausch, defendant, broke down. As a result, plaintiffs filed this suit, seeking a writ of mandamus to compel the clerk to allow them to microfilm the original, unbound conveyance and mortgage records which are in the clerk's custody. The trial court ruled that plaintiffs did not have the asserted right of access to the records. The court of appeal affirmed (433 So.2d 1105 (La.App.1983)). Writs were granted, 440 So.2d 146 (La. 1983), to determine the scope of the rights guaranteed to members of the public under the public records laws of the state. We reverse the decision of the court of appeal.
The parties entered into a stipulation concerning the facts; there is no factual dispute.
Title Research Corporation is a Louisiana corporation engaged in the business of investigating titles to immovable property; Karl Heeter is its president. Lucy Rausch is the Clerk of Court for St. Tammany Parish, and, as such, the recorder of the conveyance and mortgage records of the parish.
To facilitate its investigations, Title Research sought to microfilm all of the recently filed conveyance and mortgage records for the parish. In 1979 Mr. Heeter approached the clerk, requesting permission to microfilm the records. To this request, the clerk suggested that Title Research obtain copies of the microfilm which the clerk's office had already prepared. Title Research thereafter purchased nearly two thousand dollars worth of the microfilm from Southern Microfilm. The purchased microfilm, however, did not satisfy Title Research's needs. In March, 1980, Mr. Heeter met with the clerk to discuss the possibility of setting up his own microfilm camera in the clerk's office, in order to reproduce the original, unbound records. At the clerk's suggestion, Mr. Heeter made a written request to begin his microfilming. By return letter, the clerk denied Mr. Heeter's request, stating that her office did not have sufficient room to accommodate the microfilm machine, even though the machine was only two by three feet, just larger than a typewriter. In February, 1981, Mr. Heeter confirmed by letter a telephone conversation he had with the clerk's attorney. He repeated his request to microfilm the records, and stated that the microfilming could be done in one session per week, and after normal business hours. The parties met again, and, after some more correspondence, entered into a written agreement.
According to the agreement, Title Research was allowed to bring its microfilm equipment to the courthouse once per week, from 5:00 until 7:30 p.m. Title Research would be permitted to copy only *935 those original conveyance and mortgage records which already had been microfilmed and indexed by the clerk's staff, but which had not yet been bound permanently. The microfilming was to be supervised by a member of the clerk's staff, whose salary of twenty-five dollars per session would be paid by Title Research, four weeks salary payable in advance. In return, Title Research would furnish a copy of the microfilm to the clerk, charging the clerk only for the costs of reproduction. Additionally, Title Research was required to execute an indemnity agreement which would hold the clerk harmless in connection with any cause of action which might arise as a result of Title Research's use of its microfilm.
Title Research began its microfilming immediately after the agreement had been reached. In August, 1981, Mrs. Rausch expressed some concern over finding some of her original, unbound records out of order. To this concern, Title Research responded in writing that it returned the records in better condition than they had been received. In the same month, some of the original documents were bound before Title Research had an opportunity to microfilm them. A letter was sent to the clerk by Title Research asking that it be notified in advance of any planned pickups by the binder. Title Research also requested that the twenty-five dollar per session fee be dropped. Mrs. Rausch, through her attorney, declined to drop the fee. Again, in November, a large group of records were bound before Title Research had an opportunity to microfilm them.
To fill the gaps left by the unannounced bindings, Title Research leased a special microfilm machine which would allow it to copy the permanently bound volumes of the records. On December 2, 1981, at 9:30 a.m., Mr. Heeter went to the courthouse with the special equipment. The clerk and her attorney objected to Mr. Heeter, saying that it was not agreed that Title Research would be allowed to microfilm during normal business hours. On that same day, the clerk filed suit for an injunction against Title Research, seeking to have the company enjoined from copying any more of the records. By consent of the parties, the proceedings were continued until January, 1982. The clerk also converted the action from an injunction proceeding to an ordinary proceeding.
During the interim, Title Research was allowed to continue its filming operations, and the parties negotiated in an attempt to reach an amicable resolution of their disagreements. As a result of the meetings, Title Research submitted a proposal which suggested various alternate locations for the camera, as well as offering to purchase some of the construction material needed to fulfill some of the suggestions. On January 22, 1982, the proposal was rejected by the clerk, and the clerk, further, formally notified Title Research, in writing, that it no longer would be permitted to microfilm the original, unbound records. In response to the prohibition, by letter dated January 26, 1982, Title Research's counsel made formal demand on the clerk to provide copying access to specified records. The clerk responded that the records would be available for inspection only, and that plain paper copies of the records could be purchased from the clerk at the rate of fifty cents per page. Title Research informed the clerk that the plain paper copies would not satisfy its needs, and that it was its opinion that the clerk's response did not conform with the public records law. On February 9, 1982, Title Research and its president, individually, filed answers and reconventional demands to the clerk's lawsuit, and also filed the present action for a writ of mandamus, pursuant to C.C.P. 251; R.S. 44:35(A), ordering the clerk to provide it with free access to the unbound original records, as requested, and that it be provided with reasonable comfort and facility to do its business.
It was stipulated further that the clerk normally allows other members of the public to maintain permanent or semipermanent equipment in the courthouse, such as telephones and typewriters, and that any member of the public, whether commercial *936 enterprise or individual, is allowed access to the unbound original documents.
The two cases were consolidated, and trial was held in March, 1982. Based on the stipulated facts, and some short testimony which added only that one piece of paper, out of all those which had been copied, had been crumpled, but not destroyed, by the microfilm machine. Otherwise, the testimony merely iterated the facts contained in the stipulation. The trial court rendered its judgment in favor of the clerk, and denied plaintiffs' request for mandamus. In its reasons for judgment, the trial judge stated that the public records laws, La. Const. art. 12, § 3; R.S. 44:31, allow members of the public to examine and reproduce the public records in a reasonable manner, that a member of the public is not given the right to copy all of the public records, and that there is no right which guarantees access to the records for the purpose of deriving economic profit. Plaintiffs took a devolutive appeal to, and sought writs from, the court of appeal. The court denied the writs, stating that the proper remedy was an appeal. In due course,[1] the court of appeal rendered its judgment, and affirmed the decision of the trial court.
The court of appeal found that the constitution guarantees only the right to examine the public records, but does not guarantee the right to photograph or otherwise reproduce the records. The court also held that C.C.P. 251 applied to the clerk only in her capacity as custodian of the court's records, but not in her capacity ex officio as custodian of the conveyance and mortgage records for the parish. The court finally went on to hold that the public records inspection law, R.S. 44:31, as amended by Acts 1978, No. 686, § 1, gave discretion to the clerk to determine which method of reproduction or examination is to be used, and that the clerk could properly require Title Research Corporation or Mr. Heeter to purchase the copy provided by the clerk's office.
The right of the public to have access to the public records is a fundamental right, and is guaranteed by the constitution. La. Const. art. 12, § 3. The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Id. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see. To allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights.
This right of access takes on great practical importance in light of Louisiana's very strict, statutorily created public records doctrine. According to the doctrine, any act affecting immovable property is utterly null and void, except as between the parties, if it is not recorded in the parish where the property is located. In particular, private transfers of title, C.C. 2246, 2264, 2442, and matrimonial agreements, judgments and judicial sales, C.C. 2265, which concern immovables, affect third partiessuch as creditors and future purchasersonly from the moment that they are recorded. It is fundamental in Louisiana that any person who is not a party to a convention or judicial proceeding involving an immovable may enter into a transaction involving that immovable, and establish his rights therein by relying solely on the public records. McDuffie v. Walker, 125 La. 152, 166-67, 51 So. 100, 105 (1909). Actual knowledge alone of a contrary disposition of the property will not affect the third person's rights. The contrary disposition must be recorded properly before the third person's rights are affected; *937 but the recordation, even without the knowledge of the recordation, shall be determinative of the third person's rights.
In order to give effect to this strict doctrine, it is essential that any third personany member of the publicmust be given complete and unrestricted access to those public records which affect immovables, in particular, the conveyance and mortgage records. The legislature by the public records statutes sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. There was no intent on the part of the legislature to qualify, in any way, the right of access. See Webb v. City of Shreveport, 371 So.2d 316, 317-18 (La.App.), writ denied, 374 So.2d 657 (La.1979). As with the constitutional provision, the statute should be construed liberally, and any doubt must be resolved in favor of the right of access.
The legislative intent to provide the access in as unrestricted manner as possible is expressed best by R.S. 44:32(A).[2] Any adult member of the public need only request a record, and the custodian must supply it. The custodian may not make any inquiry, with the exception of the age and identity of the borrower, into the reason for the request, nor may the custodian attempt to intimidate any person by requesting to see what information the viewer has extracted from the public records. Additionally, the custodian must provide sufficient facility and comfort to allow the viewing public to exercise its rights of access, and thereby not discourage any member from exercising his rights.
More specifically, R.S. 44:31[3] gives to "any person of the age of majority" the right to choose from four options: he may inspect the records; he may copy the records; he may reproduce the records; or he may obtain, from the custodian, a reproduction of the records.[4] The statute is clear and unambiguous in its grant of these alternate rights, and it also is clear that the choice of which optional right to exercise rests with the one requesting the records and not with the custodian.
Legislatively balanced against the public's rights of access, it is the duty of the custodian to preserve the public records, and to ensure that nobody alters or destroys the records. This "vigilance" by the custodian, however, must be reasonable, and it must be by those means which are least intrusive on the right of access. Any restriction or limitation imposed by the custodian *938 places the burden on the custodian to justify the restriction or limitation. R.S. 44:35(B).
As a qualified member of the public, Mr. Heeter is entitled to inspect, copy, reproduce, or obtain a reproduction of the requested public records. He has chosen to reproduce the records, in toto, by means of microphotographic reproduction techniques. He has chosen the method, and the clerk-custodian may not inquire into his choice of medium. Nor may the clerk inquire as to the purpose for the large request. A commercial purpose will not justify thwarting the right to copy the public records.
It has been pointed out that one record, out of perhaps thousands, was crumpled in one of the machines which Mr. Heeter was operating, and that some of the records were returned out of order. This single occurrence of alteration does not give to the custodian the power to prevent Mr. Heeter from ever reproducing the records again. Finding the records out of order is not such an "alteration" as justifies excluding a member of the public from exercising his rights.
R.S. 44:35(B) places the burden of justification on the custodian, and in this case the custodian has failed to meet her burden.
Accordingly, the judgment of the courts below is reversed, and the clerk of court is ordered to provide the requested records to Mr. Heeter, or other qualified representatives of Title Research Corporation, and allow the reproduction of those records by any safe means during normal business hours in a non-discriminatory manner, and free of charge. All reasonable attorney's fees are assessed as costs, to be fixed by the district court on a rule filed by plaintiffs. All costs are assessed against defendant. R.S. 44:35(D).
BLANCHE, J., concurs and assigns reasons.
BLANCHE, Justice (concurring).
I concur being of the opinion that the clerk's decision to prohibit plaintiffs from copying the records in the manner chosen, during office hours, was without authority in law.
I disagree however, with the majority's statement that any member of the public must be given complete and unrestricted access to the public records which affect immovables. The right of access must be reasonable but may not be gained at the inconvenience of the public or the orderly operation of the clerk's office.
Nor is it necessary for the purposes of the opinion to opine how unrestricted the right of access should be for all circumstances. The only access question before this Court is the present one. For the purposes of this opinion, the clerk need only be instructed that she is to give the plaintiffs reasonable access to inspect and reproduce the public records of her office. This right of access, however, is not to interfere with the public's convenience or the orderly operation of the clerk's office. The right to copy and reproduce may, at the direction of the clerk, be conducted after working hours in accordance with La.R.S. 44:32(A) subject only to whether such control by the clerk is reasonable.
NOTES
[1] The court of appeal erred in denying plaintiffs' request for preferential docketing. A clearer mandate could not be fashioned:

"Any suit brought in any court of original jurisdiction to enforce the provisions of this Chapter shall be tried by preference and in a summary manner. Any appellate courts to which the suit is brought shall place it on its preferential docket and shall hear it without delay, rendering a decision as soon as practicable." R.S. 44:35(C).
[2] "The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours." R.S. 44:32(A).
[3] We note that the court of appeal was correct when it stated that C.C.P. 251 applied to the clerk only in her capacity as custodian of the court's records.
[4] "Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record." R.S. 44:31.

See R.S. 44:32(C)(1):
"For all public records, except public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to persons so requesting. The custodian may establish and collect reasonable fees for making copies of public records. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state."