887 So.2d 716 (2004)
FIRST COMMERCE TITLE COMPANY, INC., Plaintiff-Appellant,
v.
James W. MARTIN, Clerk of Court, et al., Defendant-Appellee.
No. 38,903-CA.
Court of Appeal of Louisiana, Second Circuit.
November 17, 2004.
*717 Jeff R. Thompson, Bossier City, for Plaintiff-Appellant.
Corkern & Crews, L.L.C. by Ronald E. Corkern, for Defendant-Appellee.
Before BROWN, WILLIAMS, STEWART, MOORE, and LOLLEY, JJ.
MOORE, J.
The single issue presented in this appeal is whether a clerk of court may prevent the use of hand-held or portable scanners inside the office of a clerk of court. The district court concluded that La. R.S. 44:32 C(1)(c) and C.C.P. art. 251 A allowed the clerk to prevent such use. For the following reasons, we reverse.

Factual Background
In August 2001, an employee of First Commerce Title Company went to the Bienville Parish Courthouse in Arcadia, Louisiana, to conduct title research on certain properties located in that parish. He used a small hand-held scanner to scan a section of a map hanging on the wall as well as some public documents maintained by the clerk of court. James M. Martin, the clerk of court, advised him that use of the scanner was not permitted in the clerk of court's office, and that a sheriff's deputy would remove him from the premises if he attempted to use it again. Mr. Martin followed up by letter to First Commerce, citing R.S. 44:32, "which prohibits the use of imaging equipment by others in the Clerk's Offices."
Two weeks later, the same employee was again threatened with physical removal if he attempted to use a portable scanner in the office. First Commerce's president, David Touchstone, formally protested by letter of August 21, 2001, citing La. Const. Art. 12, § 3, R.S. 44:32 and certain jurisprudence. Mr. Martin stood by his refusal to permit use of the scanner, denied he ever threatened to have First Commerce's employee arrested, and offered to make copies for anyone for $0.50 a page.
First Commerce filed the instant petition in November 2001, seeking an injunction or, in the alternative, a declaration that R.S. 44:32 C is unconstitutional.[1] By amended petition, First Commerce prayed for judgment ordering Mr. Martin to permit the use of a scanner in the Bienville Parish Clerk of Court office; to permit the use of scanners without the assessment of fees, charges or costs; and to pay attorney *718 fees and costs pursuant to R.S. 44:35 D. Mr. Martin denied First Commerce's position and also prayed for attorney fees pursuant to R.S. 44:35 F.
After a motion for summary judgment filed by First Commerce was rejected, trial was set for September 2003; ultimately, however, the parties submitted the case via joint stipulation. The district court ruled in favor of the clerk of court, finding that hand-held or portable scanners fall within the definitions of "other such imaging equipment" in La. C.C.P. art. 251 A and R.S. 44:32 C(1)(c), and that the clerk could prevent their use inside the office of the clerk of court. By judgment of March 9, 2004, the court denied First Commerce's claims and rejected both sides' claims for attorney fees. This devolutive appeal followed.

Discussion
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law. La. Const. Art. 12, § 3. The right of the public to have access to public records is fundamental and must be construed liberally in favor of free and unrestricted access to the public records. Landis v. Moreau, XXXX-XXXX (La. 2/21/01), 779 So.2d 691. Likewise, the statutory provisions for right of access to public records should be construed liberally, with any doubt resolved in favor of the right of access. Title Research Corp. v. Rausch, 450 So.2d 933 (La.1984). Louisiana's Public Records Law, La. R.S. 44:1-44, implements the constitutional guarantee:
§ 31. Right to examine records
Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record.
The exception applicable to this case is expressed in La. R.S. 44:32 C(1)(c) and C.C.P. art. 251 A, which provide, respectively:
The placement of mechanical reproduction, micrographic reproduction, or any other such imaging, reproduction, or photocopying equipment within the offices of the clerk of court by any person, individual, or enterprise described in R.S. 44:31 is prohibited.
The clerk of court is the legal custodian of all of its records and is responsible for their safekeeping and preservation. He may issue a copy of any of these records, certified by him under the seal of the court to be a correct copy of the original. Except as otherwise provided by law, he shall permit any person to examine, copy, photograph, or make a memorandum of any of these records at any time during which the clerk's office is required by law to be open. However, notwithstanding the provisions of this Paragraph or R.S. 44:31 et seq., the clerk shall not be required to permit the placement or installation of privately owned copying, reproducing, or any other such imaging equipment within the offices of the clerk of court.
The question is whether the use of a hand-held scanner constitutes the "placement" or "installation" of prohibited equipment within the offices of the clerk of court.
Initially, we observe that when the wording of a section of the Revised Statutes is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4. The same principle is voiced in La. C.C. art. 9: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall *719 be applied as written and no further interpretation may be made in search of the intent of the legislature." Only when the language of the law is susceptible of different meanings must it be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10.
While a hand-held or portable scanner plainly is a type of "imaging equipment," the question is whether the use of this device equates to "placement" or "installation" within the offices of the clerk of court. A plain reading dictates that neither "placement" nor "installation" is synonymous with "use" because both include the concept of a particular location. "Placement" is an act or instance of placing, and "placing," in turn, is putting in a particular place or directing to a desired spot; "installment" is the act of "installing," which means establishing in an indicated place.[2] Thus, the installation or placement of imaging equipment in a clerk's office denotes the assigning or locating of such equipment at a particular spot in a clerk's office. Obviously, a hand-held scanner, because of its light weight and portable nature, cannot easily be made to fit the definition of imaging equipment that is assigned to a particular location or spot.
Had the legislature desired to ban the use of any type of privately-owned imaging equipment in a clerk of court's office, then it easily could have accomplished that objective by employing the word "use" in the law. Since the legislature chose the words "installation" and "placement" instead of "use," and because not all imaging equipment requires installation or placement in order to be used for its intended purpose, we conclude that giving the words their generally prevailing meaning indicates that hand-held scanners are not included within the prohibition.
Because of the plain meaning of the statutes, there is no need for further interpretative analysis. However, we observe that the legislative history of C.C.P. art. 251 A and R.S. 44:32 C(1)(c) fully supports and fortifies the plain reading. The prohibitory language at issue was added to both statutes by La. Acts 1995, No. 372. This act began as House Bill No. 2107, which proposed the following addition to art. 251 A:
However, notwithstanding the provisions of this Paragraph or R.S. 44:31 et seq., the clerk shall not be required to permit the placement, installation, and use of copying, reproduction, or any other such imaging equipment within the offices of the clerk of court. (Emphasis added.)
The same bill proposed adding the following subpart to R.S. 44:32 C(1):
(c) the placement of mechanical reproduction, micrographic reproduction, or any other such imaging, reproduction, or photocopying equipment within the offices of the clerk of court by any person or enterprise, other than the clerk of court, is prohibited.
When this bill went before the House Committee on Governmental Affairs on April 20, 1995, the committee minutes show not only the reasons given to the committee for the proposed amendment, but also the concerns of some committee members about the breadth of the language:
House Bill No. 2107 prohibits placement of certain mechanical reproduction equipment in the officers of clerks of court. Representative Dimos presented the bill with the assistance of Ms. Debbie *720 Hudnall, Louisiana Clerks of Court Association[.]
Ms. Hudnall explained that the bill prohibits the placement of equipment other than that belonging to the clerk of court's office. She assured the committee that the bill does not deny complete and unrestricted access to the public records.
Mr. Edwin Lombard, clerk of criminal court for Orleans Parish, * * * appeared before the committee to give information. He stated that the problem arose when a vendor set up a copy machine in the clerk's office in Lafayette Parish and made copies for sale to the public. He explained that a case against the vendor was heard by the supreme court, which upheld the vendor's right to maintain the business since there was no law prohibiting him from doing so. He stated that the practice amounts to a small business being subsidized by a government agency which is the custodian of records. He noted further that other vendors could insist on being allowed to compete and that the clerk of court would be required to provide space and electricity. Mr. Lombard stated that sensitivity of original records should be considered, as well. * * *
In response to a question by Representative Deville, Mr. Lombard stated that copies are made by the clerk's office for the public at a minimal cost and special arrangements can be made for a citizen to make his own copies of voluminous documents at less cost; he added that an additional fee is charged for certifying copies. He states that the problem is permanent placement of vendors' copiers and not providing the public with copies.
Representative Bowler noted that the bill also prohibits a citizen who is not in business from bringing in his own equipment to make copies. Ms. Hudnall responded that some clerk's offices are too small to accommodate any additional equipment. She stated that current law provides for the fee set for copies to the public as well as for free copies to indigents.
Representative Green agreed with Representative Bowler's concerns, noting that while the advance of technology might make it easier to bring small or portable duplicating equipment to an office, including microfilm cameras or computer scanners, such equipment would be prohibited under the provisions of the Bill. Ms. Hudnall disagreed that these would be prohibited since they are not permanently placed in the office. Representative Green added that the language of the bill is broader than necessary to fix the problem as described.
This discussion shows a prescient sensitivity to the very problem at issue herein. Notably, in response to a direct question, the representative of the Louisiana Clerks of Court Association testified that hand-held scanners would not be prohibited because they are not "permanently placed in the office." The committee favorably reported the bill which passed the House of Representatives and proceeded to the Senate. Significantly, the Senate amended the bill, specifically to remove the word "use" from H.B. 2107's phraseology, "the placement, installation, and use," and left only "placement or installation" in Act 372. This version was passed by the legislature and signed by the governor.
Simply put, the legislative history readily supports the plain reading of the law under which hand-held or portable scanners are not prohibited from use in a clerk of court's office. The plain reading also is in keeping with jurisprudence recognizing the right of the public to have access to public records as a fundamental right, with any doubt being resolved in favor of the fundamental right.
*721 In Title Research Corp. v. Rausch, supra, the supreme court held that the president of a title company, a member of the public, was entitled to reproduce parish conveyance and mortgage records in the custody of the clerk of court by any safe means during normal business hours in a nondiscriminatory manner and free of charge; the fact that he sought to copy the records for a commercial purpose did not justify thwarting the right to copy the public records. In so holding, the court recognized the legislative balance between the public's right of access and the custodian's duty to preserve and protect the public records from alteration or destruction. However, the court stated that the "vigilance" of the custodian must be reasonable, "and it must be by those means which are least intrusive on the right of access."
Similarly, in Cummings v. Kempf, 570 So.2d 133 (La.App. 3 Cir.1990), writ denied, 575 So.2d 390 (1991), an abstractor brought a mandamus action to be allowed to install and use a copying machine in the office of the clerk of court. Citing Rausch, the third circuit held that the custodian of records failed to meet her burden of justifying charging a "supervisory fee" of $0.25 a copy and that the custodian could not charge a fee when a person made his own copies of a public record.
It is critical to note that the decisions in Rausch and Cummings, supra, did not prevent the legislature from enacting law that would place reasonable restrictions on the public's fundamental right of access to public records. The jurisprudence nonetheless holds that the custodian must use the least intrusive means to perform his or her duty to preserve and protect the records.
Finally, we note that under La. R.S. 44:35 D, if a person seeking the right to inspect or to receive a copy of a public record prevails in a public records suit such as this, he shall be awarded reasonable attorney fees and other costs of litigation. Such an award is warranted in the instant case. Rausch, supra; Cummings, supra.

Conclusion
For the reasons expressed, the judgment is reversed, and the clerk of court of Bienville Parish is hereby ordered to permit the use of a hand-held scanner in the clerk of court's office to copy public records during normal business hours at no charge. Reasonable attorney fees and costs are to be fixed by the district court, pursuant to rule filed by First Commerce Title Company.
REVERSED AND RENDERED.
BROWN, C.J., dissents with written reasons.
LOLLEY, J., dissents for the reasons assigned by J. BROWN.
BROWN, C.J., dissenting.
The question before this court is the breadth of La. C.C.P. art. 251 A which was enacted to address the court's decisions in Title Research Corp. v. Rausch, supra, and Cummings v. Kempf, supra. The constitutionality of the statute is not before this court. See La. Const. art. 12 § 3.
At first glance, the majority opinion appears to be an exercise in semantics. The majority equates "placement" and "installation" of imaging, reproduction or photocopying equipment with non-use and immobility, but such equipment was not intended to just sit and gather dust. The statute in question was enacted to address the use of this equipment to circumvent the clerk's fee for copying documents.
Although struggling over the meaning of certain words, the majority opinion is in fact talking about size. Technology is continually making equipment smaller, a reduction which translates into greater mobility. *722 It remains uncertain exactly how much volume a piece of equipment must displace to fit the majority's definition of placement or installation.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. The statute in this case is clear and unambiguous. I note, however, that in researching the legislative history, the majority failed to relate discussions contrary to their view. For example, an amendment to allow "other imaging equipment such as cameras" was withdrawn when objected to by the bill's author. Legislators recognized that the purpose of the bill was to protect a source of funding to the clerks so that they could maintain these records for the public. The trial court understood fully the intent of the statute, and I would affirm.
NOTES
[1] Also named as defendants were the State of Louisiana and Murphy J. "Mike" Foster, governor.
[2] Definitions are from New Collegiate Dictionary, Springfield, Mass.: G. & C. Merriam Co., © 1981.