# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-520

ZILLOW, INC.

VERSUS

WENDY AGUILLARD, IN HER CAPACITY AS

ASSESSOR FOR THE PARISH OF CALCASIEU

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2021-731
HONORABLE DERRICK D. KEE, DISTRICT JUDGE

**********

### SHANNON J. GREMILLION
### JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.

**REVERSED.**

**Brian A. Eddington**
**Attorney at Law**
**3060 Valley Creek Dr, Ste A**
**Baton Rouge, LA 70808**
**(225) 924-4066**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Wendy Aguillard, as Calcasieu Tax Assessor**

**Scott L. Sternberg**
**Michael S. Finkelstein**
**Sternberg, Naccari & White, LLC**
**935 Gravier Street, Ste 2020**
**New Orleans, LA 70112**
**(504) 324-2141**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Zillow, Inc.**

**GREMILLION, Judge.**

The Calcasieu Parish Tax Assessor, Wendy C. Aguillard, appeals the judgment of the Fourteenth Judicial District Court, which granted a writ of mandamus to Zillow, Inc., and "ordered [her] to permit Zillow, Inc. to purchase the [parish tax] assessment data requested directly from her external vendor, Software & Services (S&S), for the fee that company customarily charges for the production of the tax assessment roll." For the reasons that follow, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

On February 24, 2021, Zillow filed a petition for writ of mandamus in the Fourteenth Judicial District Court, seeking to compel Aguillard to produce information sought pursuant to the Louisiana Public Records Law, La.R.S. 44:1-67.2. The petition adopted by reference an email outlining the specific data Zillow sought (emphasis in original):

> Under the **Louisiana Public Records Act § 44:1 et seq.**, I am requesting an opportunity to obtain an electronic copy of the current (2020) Assessment File(s) for all parcels in Calcasieu Parish.
>
> I am looking for any of the following fields of data:
>
> - Parcel Number/Account Number
> - Owner Name(s)
> - Mailing Address
> - City/ST/ZIP
> - Property/911 Address
> - Property Use/Class Code
> - Legal Description
> - Acreage/Lot Size
> - Breakdown of Assessed Values (Land & Building)
> - Breakdown of Market Values (Land & Building)
> - Tax Bill Amounts
> - Sales Information (Date/Price)
> - Deed Book
> - Deed Page
> - Property Characteristics (# Bedrooms, # Bathrooms, Bldg Area, # Stories, Heating, A/C, etc.)

In particular, Zillow requested the records in .txt format.

Zillow's petition was heard on May 12, 2021. Zillow introduced correspondence between itself and personnel of the assessor's office, including correspondence that listed the specific .txt format files it had received in past years from S&S, a vendor with whom the assessor contracts for data services; a 2020 "Data Use Agreement" between Zillow and the assessor; 2019 correspondence between Zillow and an individual with S&S regarding the 2019 assessment rolls; the assessor's responses to requests for admissions; and the contract between S&S and the assessor. No testimony was adduced, and Aguillard introduced no evidence.

Zillow's request for admissions largely consisted of requests that Aguillard admit the authenticity of copies of correspondence between her office and Zillow. However, Request for Admission No. 3 asked, "Admit your vendor, Software and Services has a copy of the files Petitioner has requested in the format that has been requested." Aguillard responded:

> Request for Admission No. 3 is denied as written. Further answering, Assessor Aguillard would acknowledge that Software and Services is the "vendor" of the software utilized by the Calcasieu Parish Assessor's office for assessment purposes; that Software and Services has the ability to access the information in the assessment database maintained by the Calcasieu Parish Assessor's office utilizing that software; and that Software and Services has the ability to create a data record in the format requested by Petitioner from the assessment database utilizing its software.

Request for Admission No. 4 asked Aguillard to admit that she could authorize S&S to release the data files to Zillow. She responded with a denial of the request as written. Further, she indicated that she could authorize S&S "to create a data record in the format requested by Zillow but does not have the authority to instruct, direct or compel [S&S] to do so." Aguillard admitted, in response to Request for

Admission No. 5, that, in prior years, she had authorized S&S to access the assessment database and "to create and release a data record in the format requested directly to Zillow and other similarly situated third party data aggregators."

Zillow first contacted Aguillard's office about obtaining the 2020 tax information on October 27, 2020. Ms. Lori Endo-Escandon emailed Ms. Tracy Clark of the assessor's office, to inquire about the availability of the information. This email included the roster of data fields listed above. This email also asked Ms. Clark to confirm that aa attached "Data Use Agreement" between Zillow and the assessor was still valid.

Ms. Clark replied on October 28 and advised that the rolls were not ready, and the contract was no longer valid. Ms. Endo-Escandon inquired whether, once the rolls had been prepared, the information would come directly from the assessor's office. Ms. Clark stated that the data would not come directly from the assessor. This prompted Ms. Endo-Escandon to ask from where it would come and at what cost. On October 30, 2020, Ms. Clark replied and indicated that the preparation of the rolls was delayed because of Hurricanes Laura and Delta; however, she also indicated that the assessor's office "gives you the ability to view, inspect and copy parcel information free of charge. To do so, please visit http://www.calcasieuassessor.org/ and go to the property search tab. You can then view ownership, legal descriptions, assessed values, as well as deed information[.]" Ms. Clark also directed Zillow to the Louisiana Tax Commission's website, from which it could obtain tax rolls for every parish. Alternatively, Ms. Clark offered to print a hardcopy of the 2019 tax roll for $1.00 per page or to create a .pdf file.

In February 2021, Ms. Patrice A. Bazianos, an attorney for Zillow, contacted Ms. Clark and the assessor "to discuss Zillow's pending public records request for an electronic copy of the 2020 Calcasieu Parish Tax Roll." Ms. Bazianos asked whether the rolls were ready, and if so, she reiterated that Zillow wanted "a workable electronic copy of the tax roll to include the files it previously received from the your [sic] parish's vendor in .txt format." A list of files names followed. Ms. Clark replied with the same offer to provide a .pdf of the information. This reply also advised that Aguillard's office cannot create a .txt formatted copy of the tax rolls.

At the close of the hearing, the trial court found in favor of Zillow and ordered Aguillard "to permit Zillow, Inc. to purchase the assessment data requested from her external vendor, Software & Services, Inc., for the fee that company customarily charges for the production of the tax assessment rolls." Aguillard appeals and asserts that the trial court erred in granting the writ of mandamus and in ordering her to allow Zillow to purchase the data. She frames the issue as: "Does the Louisiana Public Records Law require an Assessor to 'permit' her third-party software service provider to create an assessment record in a specified format to satisfy a public records request?"

**ANALYSIS AND DISCUSSION**

"Mandamus is a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864." La.Code Civ.P. art. 3861. "A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law[.]" La.Code Civ.P. art. 3863.

4

Mandamus, codified in La.Code Civ. Proc. art. 3862, et seq., is an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief. This Court has routinely held that the only circumstances under which courts may cause a writ of mandamus to issue is where the actions sought to be performed by the legislature are purely ministerial in nature. A ministerial duty, the performance of which may be required of the head of a department by judicial process, is one in which nothing is left to discretion.

*Hoag v. State*, 04-857, p. 6 (La. 12/1/04), 889 So.2d 1019, 1023.

"A ministerial duty is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." *Id.* at 1024.

In addition to general mandamus provisions, the Public Records Law also specifically provides for mandamus relief to a person whose public records request has gone unheeded. Louisiana Revised Statutes 44:35 provides:

A. Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.

B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court.

The provision also allows the award of attorney fees against the custodian, as well as actual damages should the court determine that the custodian arbitrarily and

capriciously withheld the requested records, the payment of which the custodian is personally liable. La.R.S. 44:35(E)(2).

An informed citizenry provides a bulwark against official corruption and holds officials accountable, two elements essential to democratic government. *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311 (1978). The Constitution of the State of Louisiana enshrines its citizens' right to access public records: "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases provided by law." La.Const. art. 12, § 3.

The legislature has enacted statutes that facilitate free access to public records. Louisiana Revised Statutes 44:1(A)(2)(a) provides:

> All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.

The Public Records Law requires that the custodian of a record prove that a record is not subject to inspection, copying, or reproduction. La.R.S. 44:31(B)(3). The Public Records Law is to be liberally construed "in favor of free and unrestricted access to public documents." *Shane v. Par. of Jefferson*, 14-2225, p. 9 (La. 12/8/15), 209 So.3d 726, 735. However, the custodian is only required to produce documents in his custody and is not required "to create new documents in

6

the format requested." *Williams Law Firm v. Bd. Of Sup'rs of Louisiana State Univ.*, 03-79, p. 6 (La.App. 1 Cir. 4/2/04), 878 So.2d 557, 563.

The assessor argues that previous opinions of this court and of our colleagues on the first circuit foreclose the issuance of mandamus in this matter. *See Zillow, Inc. v. Bealer,* 21-545 (La.App. 3 Cir. 2/2/22), 333 So.3d 854, *writ denied*, 22-378 (La. 5/10/22), 337 So.3d 908; *Zillow, Inc. v. Taylor*, 21-739 (La.App. 3 Cir. 3/30/22), 350 So.3d 550; *Zillow, Inc. v. Gardner*, 21-1172 (La.App. 1 Cir. 4/8/22), 341 So.3d 765; and *Zillow, Inc. v. Blanchard*, 21-1167 (La.App. 1 Cir. 5/17/22), 342 So.3d 892.

*Bealer* involved a request that the Vernon Parish assessor "provide 'an electronic copy of the current 2019 Web Files and Collections file for all parcels in Vernon Parish in text file format, its native format[.]'" *Bealer,* 333 So.3d at 856. The requests in *Taylor* and *Gardner* were similar. In *Blanchard*, Zillow requested

> "an opportunity to obtain an electronic copy of the current (2020) Assessment File(s) for all parcels in Assumption Parish." Zillow identified the fields of data it sought to obtain, including parcel/account numbers, owner names, addresses, breakdowns of assessed and market values, and tax and sales information. Zillow requested that Assessor Blanchard advise "what information is available, if any cost is associated with this request, data format (i.e.: Excel, database, text), media (CD, FTP, etc.) and procedure to acquire the files(s)."

*Blanchard*, 342 So.3d at 893. In each case, the assessor advised Zillow that the data was not maintained in the format sought, and that Zillow could only receive the requested data in the requested format by obtaining it from S&S.

Our court in *Bealer* found "no legal support for Zillow's argument that Assessor Bealer be ordered to have his software service provider create the assessment record in a 'text file format.'" *Bealer*, 333 So.3d at 863. The assessor refused to authorize S&S to give the data to Zillow on the grounds that some of the

7

data requested was confidential pursuant to La.R.S. 47:2327.[1] However, the *Bealer* panel did not address this contention and instead found no manifest error in the trial court's finding that the assessor did not maintain his records in .txt format. Because he could not be compelled to create a document to satisfy a public records request, the assessor did not violate the Public Records Law.

*Taylor* involved a similar request directed to the Catahoula Parish assessor. The assessor indicated that he was willing to allow Zillow to purchase the data from S&S but wanted to charge it the same fee he charges municipalities for the same data. When Zillow balked at paying that fee, the assessor produced a .pdf copy of the requested data. At the trial on Zillow's petition for mandamus, only the assessor testified. His testimony established that his office lacked the capability of generating the data in the requested format. He could authorize S&S to provide the information in that format but could not compel it to.

Zillow's argument in *Taylor* was largely based upon an inference that if the assessor could produce an image of the data, the .pdf file, he could also produce a copy of the data. However, this inference was not supported by evidence. And "when the only evidence in the record demonstrates that the official is, in fact, not in custody of the record, and the trial court finds that he is not in custody of the

---

[1] Louisiana Revised Statutes 47:2327 reads (emphasis added):

> Forms filed by a taxpayer pursuant to this Part shall be confidential and shall be used by the assessor, the governing authority, the Louisiana Tax Commission, and the Louisiana Department of Revenue, solely for the purpose of administering the provisions of this Part and verifying eligibility for tax credits claimed under R.S. 47:6006. *The forms shall not be subject to the provisions of the Public Records Law*, provided however, that the forms shall be admissible in evidence and subject to discovery in judicial or administrative proceedings according to general law relating to the production and discovery of evidence subject to any protection related to use of confidential information provided by an order under the provisions of Code of Civil Procedure Article 1426. *For purposes of this Section, forms shall include all information provided by a taxpayer to an assessor pursuant to this Part.*

record, this court is prohibited from reversing by the manifest error rule." *Taylor*, 350 So.3d at 556.

In *Gardner*, 341 So.3d 765, Zillow requested "'the data in the same format that is sent to the State Commissioner.'" *Id*. at 767. It sent a second request to the assessor for the data in its native format. Zillow's attorney requested that the assessor "'waive the data release/authorization fee and allow Zillow to purchase a workable file from [the parish's] vendor for a fee reflective of the actual cost of providing the data.'" *Id.* The assessor referred Zillow's attorney to contact his own attorney, who informed Zillow's counsel that .pdf was the only format in which the assessor could supply the data.

After Zillow filed its petition for writ of mandamus, the trial court heard the matter. The assessor indicated that he was concerned about the confidential nature of some of the data Zillow requested. Following the hearing, the trial court determined that the assessor was only obligated to supply the requested data in a format maintained by his office. Zillow's petition was dismissed, and it appealed to the first circuit. Citing *Bealer*, 333 So.3d 854, the first circuit panel ruled that the assessor's offer to supply the requested data in .pdf format satisfied his obligation under the Public Records Law.

In *Blanchard*, 342 So.3d 892, Zillow requested that the Assumption Parish assessor provide it "'an opportunity to obtain an electronic copy of the current (2020) Assessment File(s) for all parcels in Assumption Parish.'" *Id*. at 893. As in the present matter, Zillow listed the fields of data it needed. "Zillow requested that Assessor Blanchard advise ʻwhat information is available, if any cost is associated with this request, data format (i.e.: Excel, database, text), media (CD, FTP, etc.) and procedure to acquire the files(s).'" *Id.* The assessor informed Zillow that he

would charge it an $800 fee to allow S&S to provide it with the requested data in the format it sought. The assessor sent Zillow .pdf versions of the data.

Later, the assessor indicated that he would not authorize S&S to prepare the information in the requested format over concerns of confidentiality. However, he offered to have S&S create data files for a fee of $780, which was the actual cost S&S would charge plus "the expense to review each parcel listing entry and verify that no confidential data is included." *Id*. at 894.

Zillow sought mandamus relief. The trial court found that the assessor satisfied the Public Records Law when he supplied Zillow with .pdf versions of the requested data. Zillow then appealed.

On appeal, Zillow asserted, as it had in *Taylor*, that the finding that the assessor did not possess the native data defied credibility. Relying on Zillow's own evidence, namely the emails between its personnel and that of the assessor's office, the first circuit found that the requested data file does not exist and must be created by S&S. Because a records custodian cannot be compelled to create a document, the trial court's judgment was affirmed.

Zillow cites *Title Research Corp. v. Rausch*, 450 So.2d 933 (La.1984) for the proposition that a member of the public is given four options under the Public Records Law: inspecting the records, copying the records, reproducing the records, or obtaining a reproduction of the records from the custodian. In *Rausch*, the plaintiff, a title company, expressed the desire to microfilm the mortgage and conveyance records of St. Tammany Parish. The clerk advised plaintiff that those records had already been microfilmed and directed plaintiff to the vendor which had prepared them. Plaintiff obtained the microfilms but found them insufficient for its needs. Plaintiff then requested that the clerk allow it to bring its own

microfilm equipment into the clerk's office to reproduce the records, but that request was denied because the clerk indicated that her office could not accommodate the machine, which was only slightly larger than a typewriter.[2]

Eventually, plaintiff and the clerk entered into a written agreement whereby plaintiff was allowed to bring its equipment into the clerk's office once a week for two and a half hours to copy only the unbound records that had already been microfilmed. The work would be supervised by a member of the clerk's staff, whom plaintiff would compensate at the rate of $25.00 per hour, with four weeks' salary paid in advance.

After the work commenced, the clerk complained that some of her records had been returned out of order. The clerk then began binding records plaintiff had not been able to reproduce. Later that same month, a large quantity of records were sent for binding before plaintiff could microfilm them. Plaintiff then leased a microfilm machine that could reproduce bound material, but the clerk refused to allow it to bring the machine into the office during business hours. The clerk also filed suit against plaintiff to enjoin it from copying any more records. Plaintiff was notified that only hard copies of documents would be allowed and at a cost of $0.50 per page.

Plaintiff filed a reconventional demand and separately, with its company president, sought a writ of mandamus "to compel the clerk to allow them [sic] to microfilm the original, unbound conveyance and mortgage records" of St. Tammany Parish. *Id.* at 934. The two matters were consolidated for trial. At trial,

---

[2]type·writ·er ˈtīp-ˌrī-tər: A machine for writing in characters similar to those produced by printer's type by means of keyboard-operated types striking a ribbon to transfer ink or carbon impressions onto the paper. Merriam-Webster Online Dictionary. https://www.merriam-webster.com/dictionary/typewriter.

the clerk identified one page that had been crumpled by the microfilm machine and complained of the disorderly return of records as alterations of the records that would justify excluding plaintiff from inspecting the records. The trial court ruled in favor of the clerk. The trial court found that there is no right to copy all of the public records, that the right to examine and reproduce records is limited to doing so in a reasonable manner, and that the right does not extend to those for whom the public records will be put to economic use.

On appeal, the first circuit held that the Louisiana Constitution does not guarantee the public's right to reproduce public records. Further, the court held that the records custodian has discretion to decide which methods of reproduction or examination may be used. *Title Research Corp. v. Rausch*, 433 So.2d 1105 (La.App. 1 Cir.), *writ granted*, 440 So.2d 146 (La.1983).

The supreme court ruled that the right of public access to records is fundamental. *Rausch*, 450 So.2d 933. Any doubt about whether a record is subject to public scrutiny is resolved in favor of the public. The court noted that the public records doctrine and other dictates regarding the recordation of acts affecting immovable property make public access all the more important. However, the custodian is tasked with the duty to preserve the records, but that task must be accomplished in a reasonable manner that is "least intrusive on the right of access." *Rausch*, 450 So.2d at 937.

The company president was entitled to copy or reproduce the records by the means he chooses, and it mattered not why he wanted them. One is entitled to no less access to public records because he seeks them for economic purposes. *Id*.

However, *Rausch* involved a public record seeker who was actively reproducing the records itself.  Zillow is seeking to use the mandamus procedure to force someone else to reproduce the records for it.

The Public Records Law establishes the mechanism for enforcing a public records request.  Louisiana Revised Statutes 44:35 provides:

> A. Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.

> B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action.  The court may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court.

> C. Any suit brought in any court of original jurisdiction to enforce the provisions of this Chapter shall be tried by preference and in a summary manner.  Any appellate courts to which the suit is brought shall place it on its preferential docket and shall hear it without delay, rendering a decision as soon as practicable.

> D. (1) If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.

> (2) If a public body or official brings a suit against a person based on the person's request to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record and the person prevails in the suit, the person shall be awarded reasonable

attorney fees and other costs of litigation.  If the person prevails in part, the court may in its discretion award the person reasonable attorney fees or an appropriate portion thereof.

E. (1) If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requestor any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided.  In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requestor civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification
.

(2) The custodian shall be personally liable for the payment of damages pursuant to Paragraph (1) of this Subsection and shall be liable in solido with the public body for the payment of the requestor's attorney fees and other costs of litigation, except where the custodian has withheld or denied production of the requested record or records on advice of the legal counsel representing the public body in which the office of such custodian is located, and in the event the custodian retains private legal counsel for his defense or for bringing suit against the requestor in connection with the request for records, the court may award attorney fees to the custodian.

F. An award for attorney fees in any suit brought under the provisions of this Chapter shall not exceed the amounts approved by the attorney general for the employment of outside counsel.

This provision allows the trial court to award mandamus relief "ordering the production of any records improperly withheld from the person seeking disclosure."  The trial court can also award injunctive and declaratory relief and, if the custodian has unreasonably or arbitrarily failed to respond to a request, award civil penalties and attorney fees.  These awards are, however, predicated upon the requester having

been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time

14

reasonably necessary for collection, segregation, redaction, examination, or review of a records request[.]

La.R.S. 44:35(A).

The only person against whom the mandamus can be directed is the assessor, who acts as records custodian. *Id*. *See* also La.Code Civ.P. art. 3861. In none of the four cited cases involving Zillow was the assessor found to have violated the Public Records Law by providing Zillow with .pdf-formatted records. The assessor has either violated the Public Records Law or not; if so, mandamus can direct her to comply and if not, mandamus is not appropriate. *See* La.R.S. 44:35.

Louisiana Revised Statutes 44:1(A)(2)(a) allows Zillow to receive "information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function[.]" Pursuant to La.R.S. 44:32(A):

(1) The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine, or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours. The custodian shall be permitted to make an inquiry regarding the specificity of the records sought by the applicant if, after review of

15

the initial request, the custodian is unable to ascertain what records are being requested.

　　(2) If the custodian reasonably determines that the request would substantially disrupt required government operations, the custodian may deny access only after reasonable attempts to narrow or specify the request with the requestor.

The assessor may collect a reasonable fee "for making copies of public records, which may include the transmission of electronic copies of public records." La.R.S. 44:32(C)(1)(a). Those payments may be assessed in advance. *Id*.

However, if the assessor does not utilize a .txt format for facilitating her duties and does not store .txt files in her data processing equipment, she cannot be compelled to produce records in that format. Zillow's protestations to the contrary, the evidence demonstrates that Aguillard does not prepare or store the tax information in .txt format, and she lacks the capacity to produce a .txt format document; ergo, she cannot be compelled to produce them in that format. On the other hand, like Title Research Corp., Zillow is entitled to reproduce the records itself within the limitations on time and manner set forth in La.R.S. 44:32(A).

## CONCLUSION

Aguillard is bound to produce public records over which she is the custodian. She is not obligated to produce records over which she is not the custodian. These may seem like elementary propositions, but the disagreement between Zillow and Aguillard essentially reduces to whether she is the custodian over .txt files created on her behalf by S&S. We find that she is not.

The judgment of the trial court is reversed. All costs of this proceeding are taxed to plaintiff/appellee, Zillow, Inc.

**REVERSED.**

16