KLINE, J.
|2The St. Tammany Parish Coroner appeals a judgment ordering it to produce for Laura King[2] copies of certain documents for 10 cents per page and ordering it to produce pages of emails in an electronic format making use of Adobe soft *1243 ware. For the following reasons, we amend in part and affirm as amended.
PERTINENT FACTS AND PROCEDURAL HISTORY
This litigation arises from a public records request Ms. King made to the St. Tammany Parish Coroner (Coroner). On January 13, 2010, Ms. King made a public records request to the Coroner seeking copies of emails from seven persons covering the period from June 30, 2008 through the date of the request. She also asked for copies of “all Coverdell grant records” from 2007 through the date of the request. The letter suggested that the records be copied onto a CD or a flash drive, but stated that they could be produced as paper copies.
The Coroner responded on January 21, acknowledging the request. The Coroner’s office estimated that at least 93,000 pages would be produced at 25 cents per page, for an estimated total of $23,250. The letter recited that if burned to a disc, the copies would be 50 cents per page, for an estimated total of $46,500. Additionally, the letter from the Coroner’s office stated that Ms. King would be charged overtime rates for the work for an indeterminate number of hours.
On January 22, 2010, the Coroner filed a Petition for Declaratory Relief. In the petition, the Coroner stated that it could not comply with Ms. King’s request within three days as required by law. The petition commented that overtime hours would be required to comply with the records request. The petition also referenced possible privileges that the Coroner might assert. The Coroner sought relief from the court allowing it more than three days to respond the records request; entitling the Coroner to reasonable copying costs for paper copies at recognized rates; hallowing the Coroner to collect the fees in advance; entitling the Coroner to reimbursement for overtime and outside copy labor charges; and requiring Ms. King to post a cost bond.
On January 26, 2010, Ms. King responded with an amended public records request. She reduced her request to seek access to only her email records between June 30, 2008 and August 25, 2009, together with the Coverdell Grant records. She sought to examine and copy the records herself. In the requesting letter, she initially agreed to pay 25 cents per copy for copies of the documents.
On February 11, Ms. King answered the petition, made a reconventional demand, and sought declaratory relief and a writ of mandamus. Ms. King generally denied the allegations of the Coroner’s petition, sought an order compelling the Coroner to comply with her public records request, and asked for attorney fees. The Coroner answered Ms. King’s reconventional demand, generally denying her allegations.
The matter came on for trial by summary proceeding on March 4, 2010. The trial court subsequently entered judgment granting in part and denying in part both parties’ demands. It ordered the Coroner to produce 440 pages of the Coverdell Grant records at a cost of 10 cents per page, or $44.00. It further ordered the Coroner to immediately provide 4,782 pages of emails immediately by electronic format, with at least 2,500 of the remaining pages to be produced by electronic format each successive Friday until all 14,339 documents were produced. The trial court ordered the Coroner to promptly generate a privilege log and ordered the Coroner to produce privileged information in redacted form if possible. The trial court denied Ms. King’s prayer for attorney fees.
*1244 The trial court denied the Coroner’s request for new trial. The Coroner appealed, asserting four assignments of error, summarized as follows:
|41. Ordering Ms. King to pay only 10 cents per page for copies of Cover-dell grant records;
2. Ordering the Coroner to produce 14,339pages of email per Ms. King’s public records request at no cost to her;
3. Ordering the Coroner to produce 14,339pages of email in an electronic format;
4. Ordering the Coroner to produce 14,339pages of email at a production schedule that is so burdensome that it interferes with the operation of its constitutional and legal duties.
DISCUSSION
The Coroner’s arguments primarily criticize the trial court’s interpretation of La. R.S. 44:32(C)(2) and Louisiana Administrative Code (LAC) 4:1.301. These provisions govern public records in the hands of state agencies. They provide as follows, in pertinent part:

La. R.S. U:32(C)(2):

For all public records of state agencies, it shall be the duty of the custodian of such records to provide copies to persons so requesting. Fees for such copies shall be charged according to the uniform fee schedule adopted by the commissioner of administration, as provided by R.S. 39:241.[3]

LAC LI-301:

A. Copies of public records furnished to a person so requesting shall be provided at fees according to the following schedule.
B. 1. Charges for the first copy of any public records shall be at a minimum $0.25 per page for microfiche reproductions or paper copies up to 8 1/2 by 14 inches.

Electronic Format Email

The Coroner argues in brief that under these provisions, the trial court judgment is contrary to law because “the law requires that public records stored in a computer database will be provided through printouts.” The Coroner further Largues that, “[h]ad the legislature wished for the public to be able to obtain reproductions of information stored in the computer database of a state agency in any other form, they could have so stated.” He continues, “As the law stands, the only reproductions permitted of records stored in a state agency computer are printouts.”
In this context, we review Louisiana law and jurisprudence to determine whether the trial court erred in ordering that the Coroner produce 14,339 pages of email on an electronic format. First, La. Const. Art. 12, § 3 provides a fundamental right to the public to have access to public records, as follows:
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.
*1245 Pursuant to this Constitutional guarantee, La. R.S. 44:31 provides as follows:
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record. (Emphasis added.)
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
(3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
Further, as provided in La. R.S. 44:31(B)(3) and La. R.S. 44:35,[4] the burden of justification for withholding records is on the custodian. The Louisiana Supreme Court instructs us that the provisions of the Constitution and the statutes must be liberally construed in favor of free and unrestricted access, “and any doubt must be resolved in favor of the right of access.” Title Research Corp. v. Rausch, 450 So.2d 933, 936-37 (La.1984).
| BPursuant to these precepts, we conclude that the trial court did not err in ordering the Coroner to produce the pages of email by electronic format.
At the hearing in the trial court, at which no evidence was introduced, the counsel for the Coroner conceded that it could and would produce the pages in electronic format:
— Ms. King argued that less expensive means than photocopying existed for her to obtain the records' she sought.
— The Coroner acknowledged that he had the technology and skill to download the information sought, but he argued, “[tjhat’s just a time issue. I mean it’s not really a financial issue other than the time required to do that....”[5]
We note, as did the supreme court in Title Research Corp., 450 So.2d at 937, that the person requesting public records has the right pursuant tó La. R.S. 44:31(B)(1) to choose one of four options and that “the choice of which optional right to exercise rests with the one requesting the records and not with the custodian.” (Emphasis added.)
— Here, while Ms. King requested copies in her formal requests, at trial she requested that she either be allowed to copy the emails herself or that they be downloaded onto an electronic format. Thus, she made her election, indicating that she wanted the least expensive option.
— After discussion with counsel regarding cost, time, and ease of compliance, counsel for the Coroner conceded that it would produce the records in electronic format as follows: “Absolutely we will produce it that way.” (Emphasis added.)
Obviously, therefore, all documents had not been reproduced at that time. None *1246 had been produced to Ms. King. Accordingly, the trial court found that copy 17costs could be avoided and ordered that the emails be downloaded onto an electronic format over a four week period.
Further, despite the Coroner’s contention to the contrary, nothing in La. R.S. 44:32(0(2) or LAC 4:1.301 specifically prohibits reproduction of public records by electronic format. And, “access can be denied only when a law, specifically and unequivocally, provides otherwise.” Title Research Corp., 450 So.2d at 936.
In Johnson v. City of Pineville, 08-1234, p. 10 (La.App. 3 Cir. 4/8/09), 9 So.3d 313, 320, although involving a non-state agency, the court considered a similar public records request and found use of electronic formats is safe and reasonable. The City of Pineville court observed and reasoned regarding voluminous records, with which we agree:
We live in an age of technology in which private individuals, as well as government, can use information technology to create astronomical numbers of documents. To allow [the public entity] to create such voluminous records using information technology and then deny the use of that same technology to the public reviewing those records would strike directly at the heart of the public’s fundamental right of access to public records that is guaranteed by the Louisiana Constitution. When confronted with public records of goliath proportions, the average citizen’s fundamental right of access would prove illusive if he is denied the opportunity to use the very technology which helped create the overwhelming amount of information. To reproduce over 13,000 e-mails on paper, when other safe, efficient, and reasonable means are available, is unnecessarily laborious, costly, wasteful, and conflicts with the legislative intent of making public records as available as possible. City of Pineville, 08-1234 at p. 9, 9 So.3d at 319-20.
Liberally construing the public records laws in favor of access to the records, the City of Pineville court ordered reproduction of public records employing an electronic format, noting that no specific law prohibited reproduction of public records in this format. Id., 08-1234 at p. 10, 9 So.3d at 320.
Similarly, we conclude the trial court did not err in ordering the Coroner to produce the emails requested by electronic format and in providing a reasonable |stime for the Coroner to comply. And based on the Coroner’s representations at trial, we conclude the trial court did not err in failing to impose the apparently negligible cost of the electronic format on which the data will be downloaded.

Attempts to Distinguish City of Pineville

We respectfully acknowledge the Coroner’s attempts to distinguish City of Pine-ville, but we find the attempts unpersuasive. First, he argues that the use of the word “shall” in La. R.S. 44:32(C)(2) is mandatory where it requires that fees for copies “shall be charged” according to a uniform fee schedule adopted by the commissioner of administration.[6] As discussed *1247 above, the statute does not specifically prohibit the reproduction of public records by electronic means. Secondly, he argues that unlike in City of Pineville, the emails at issue here had not been segregated from those exempt from the Public Records laws. This argument was not raised at trial and appears contrary to those made at trial. The record does not support the Coroner’s arguments in this regard. Further, the trial court gave the Coroner a reasonable amount of time to comply with its judgment.
Third, the Coroner argues that the trial court in City of Pineville ordered that the documents be produced at the cost of the person requesting the public records while the trial court here did not assess costs. As discussed above, however, the trial court found, based on the representations of counsel, that the cost of reproducing the emails at issue could be avoided. From the record before us, we cannot conclude that the trial court erred in this regard.
Fourth, the Coroner seems to argue that it can limit the number of documents a requestor can receive at no cost. The Coroner cites a prisoner suit in support of this contention. However, as discussed above, the trial court reasonably | ¡¡found that costs and time expenditure could be avoided by employment of an electronic format.
Further, in this fourth argument the Coroner seems to contend, without support of law, that one requesting public records should be required to pay for the Coroner’s exercise of his obligations to protect legally privileged information. The Coroner seeks to include the office costs of protecting privileged information into the costs of copying. The law, however, sometimes puts an onerous burden on the Coroner to prove that he is not required to comply with a public records request. La. R.S. 44:31(B)(3) and La. R.S. 44:35. We find nothing in the law, and the Coroner cites nothing, that would allow the Coroner to shift this burden.[7]
Fifth, the Coroner re-asserts that LAC 4:1.301 requires that documents be reproduced on paper. We have addressed this argument in the reasons set forth above. Finally, the Coroner argues based on City of Pineville that one making a public records request should not always be allowed to reproduce public records in any way he or she chooses. Our holding today does not go so far as the Coroner suggests. Based on the record before it and the representations of counsel, the trial court fashioned a reasonable and narrowly-tailored remedy for the issues at hand in accordance with the law.
Accordingly, we find no merit in the Coroner’s second, third, and fourth assignments of error.

Copies of Grant Records

At trial, the Coroner argued that the Coverdell Grant records were in hard form and could be not reproduced electronically. He argues that the trial court erred in ordering a copy cost of 10 cents per copy when LAC 4:1.301 requires at least 25 cents per page. We agree that LAC 4:1.301 requires copy costs of 25 cents Imper page, and we do not see where the trial court has discretion to vary this cost, despite the Coroner’s representation. At trial the Coroner advised the trial court *1248 that, “It’s up to you to sort of, you know, it’s up to you to set the price.” While we agree with the trial court that 10 cents per copy is reasonable, we reluctantly conclude that the trial court abused its discretion in setting the fee for hard copies at less than that required by LAC 4:1.301.
We find merit in the Coroner’s first assignment of error. We amend the trial court judgment to reflect a copy cost for 440 pages of the Coverdell Grant records to 25 cents per page, or $110.00.
DECREE
For the foregoing reasons, we amend the trial court judgment and order and adjudge that Laura King shall pay a reasonable sum to the St. Tammany’s Parish Coroner’s Office of $0.25 per page for copies of the Coverdell Grant records for a total of $110.00. We vacate the judgment insofar as it ordered $0.10 per page for these copies for a total of $44.00. In all other respects, we affirm the judgment of the trial court. Costs of this appeal in the amount of $409.05 are to be split equally between Laura King, referred to as Jane Doe in the petition, and the St. Tammany Parish Coroner.
AMENDED; AFFIRMED AS AMENDED
KUHN, J., Concurs in Part & Dissents in Part & Assigns Reasons.
PETTIGREW, J., concurs and assigns reasons.

. Although the defendant/appellee is referred to as Jane Doe in the lawsuit caption, Ms. Laura King is the real party in interest.

. Louisiana Revised Statutes 39:241 provides in pertinent part as follows:
A. Not later than ninety days after the effective date of this Section, the commissioner of administration, with the approval of the governor, shall, by rule or regulation, adopt a uniform fee schedule for copies of public records of executive branch state agencies furnished to persons so requesting by custodians thereof, as provided by R.S. 44:32. Copies of the public record furnished to a person so requesting shall be provided at fees according to the schedule, except for copies of public records, the fees for the reproduction of which are otherwise fixed by law.

. Louisiana Revised Statutes 44:35(B) provides that “the burden is on the custodian to sustain his action.”

. The Coroner’s main concern in this regard at the trial court appears to have been the time and costs associated with asserting it privileges. We discuss his contentions below.

. The Coroner contrasts the language employed in La, R.S. 44:32(C)(l)(a). which applied to the City of Pineville, a non-state agency The language of this paragraph is discretionary. This paragraph provides as follows:
For all public records, except public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to persons so requesting. The custodian may establish and collect reasonable fees for making copies of public records, *1247 Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state. (Emphasis added.)

. We observe that the Public Records Laws seem designed to provide actual costs involved in providing records pursuant to a requestor’s constitutionally protected right. It does not seem designed to allow office costs and costs of asserting a public entity’s legal obligations and privileges.