PETTIGREW, J.
lain this public records request case, the plaintiff, Randal Johnson (Mr. Johnson), was denied his request by the Louisiana Board of Pharmacy (the Board) to produce a digital copy of a computer database he alleged contained public record information. The trial court granted plaintiffs motion for alternative writ for mandamus, which was made peremptory after a hearing, by judgment signed October 4, 2012. The judgment ordered the Board to comply with plaintiffs request; ordered the plaintiff to pay reimbursement for the costs of fulfilling said request not to exceed $500.00; and, also, awarded the plaintiff attorney’s fees in the amount of $4,000.00 together with the costs of the proceeding. This appeal by the Board followed. After a thorough review of the record and applicable law, taking into consideration the concessions of plaintiffs counsel at oral argument, we amend the court’s judgment to modify the amount of reimbursement costs the plaintiff is ordered to pay. However, as modified, we affirm the judgment ordering the Board to comply with the public record request, finding the trial court did not err in granting the request.
FACTUAL BACKGROUND
On August 24, 2012, Mr. Johnson, a person well known in the pharmacy industry as the President of the Louisiana Independent Pharmacy’s Association (LIPA), in his individual capacity, made a public records request by way of email to Malcolm J. Broussard (Mr. Broussard), the executive director and record custodian for the Board, to produce a list of pharmacies, including the names thereof, the owners’ names, the mailing and physical addresses, the DEA, NCPDP [1], and permit numbers for each, the name of the pharmacist in charge at each, as well as the telephone, fax, and email contacts for each.
On that same date, Mr. Carlos Finalet (Mr. Finalet), general counsel for the Board, replied by email to Mr. Johnson’s email request, that the Board’s computer system was unable to generate reports compiling the list of information requested, but offered instead to generate a “simple mailing list, with name and address.” Mr. Finalet’s email also | vindicated that the Board’s system did not include pharmacy telephone or fax numbers, email addresses, and that the Board did not collect the NCPDP numbers. Mr. Finalet also responded that while the Board did collect and store each pharmacy’s DEA number, “I would suggest it might be bad public policy to release the DEA numbers (for obvious reasons).”[2]
*1252 On September 4, 2012, Mr. Johnson again emailed Mr. Broussard, acknowledging the time constraints and resources necessary to meet his request, and in that email he agreed to modify that request to being provided with access to review the licensure database for pharmacies and pharmacists. Mr. Johnson advised that he would be accompanied to the review of the records by a “qualified professional” who would then digitally copy the information needed to compile the requested list of information onto his own storage equipment. He also requested that the Board notify him as to the time that such request could be honored.
Later that same day, Mr. Finalet replied to Mr. Johnson’s email request, advising him that Mr. Broussard was out of town until September 10, 2012, and that he (Broussard) as executive director would have to evaluate the staff resources of the Board upon his return to determine a proper schedule for Mr. Johnson’s review of the database.
Again, on that same date, Mr. Johnson replied that Mr. Finalet should take a look at the public records request statute (indicating that a public body is not allowed unnecessarily to delay providing requested public records) and reiterated his request that he be allowed access to the database by the end of that week. Mr. Johnson further advised that he did not foresee needing to utilize any of the Board’s own staff to access the database for the information he requested, so that no Board resources would be utilized in meeting his request.
RLater that same date, Mr. Finalet sent a reply email disputing Mr. Johnson’s assertion of the Public Records Law as a basis for his request. He indicated that the Board acknowledged the request for records that are public In nature, and its duty to provide him with access, but contested Mr. Johnson’s assertion that the records should be provided quickly without delay. Specifically, Mr. Finalet noted that the statute “does not state a specific time-line/deadline within which you shall have access.”
More significantly, Mr. Finalet replied that the files requested by Mr. Johnson, while containing public information, also contained “confidential information” such that the Board would have to retain a staff member to pre-review the files to separate the confidential information, and also, that the Board would charge Mr. Johnson for the staffs salary spent on compiling the public records requested. Finally, he reiterated that Mr. Johnson would have to await further instructions from Mr. Brous-sard regarding scheduling the request.
On September 8, 2012, by email, Mr. Broussard sent a comprehensive reply to Mr. Johnson, initially, stating the following:
With respect to our licensure information system, we are unable to create a computer screen shot that contains all the information you requested that does not also contain confidential information, such as social security numbers. Therefore, we are unable to grant you access to the licensure database. However, we can give you access to the files containing such documents used to create the database.
(Emphasis added.) The reply then posed numerous questions to Mr. Johnson related to limiting the scope of his request, ie., did it seek only information related to active status pharmacies, or restricted status as well; did it seek credentials related to only active status, or was it also seeking information on “inactive, suspended, revoked, closed, deceased?”; did it include *1253 only pharmacies with Louisiana addresses, etc.
Mr. Broussard then advised that prior to Mr. Johnson’s review of the database, the Board would need to utilize a staff member to screen each file, find a way to block access to confidential information, and indicate a need to narrow the files requested so that no time or resource would be wasted screening unnecessary' files. He informed Mr. Johnson |sthat he would be responsible for reimbursing the Board for the labor costs for staff persons assigned to the request, as well as copying charges. He further advised Mr. Johnson that the estimated time for the pre-screening of the files in preparation of complying with his request would be “weeks and probably months.” Finally, he asserted his nonlegal opinion that the request was “overly burdensome” and that once Mr. Johnson could “clarify the magnitude of it,” the Board would then begin the pre-screening and advise Mr. Johnson when the files would be ready for review.
As discussed below, following receipt of the September 8, 2012 email from Mr. Broussard, plaintiff filed a petition for writ of mandamus ordering the Board to comply with his request. However, on September 19, 2012, plaintiffs attorney also sent an email to Mr. Finalet asking him to provide the name of a witness that would be called to testify regarding the Board’s licensure databases and computer programs related to licenses for pharmacists and pharmacies, including information regarding the architecture of the database and whether any technical impediments exist preventing making a copy of those files. Mr. Finalet responded that there had been no response yet from the plaintiff to Mr. Broussard’s inquiry in his September 8, 2012 email regarding “clarification” of the “magnitude” of the plaintiffs request. Plaintiffs counsel responded to that email, also on September 19, 2012, that “Mr. Johnson presented a straightforward, simple request — he wants a digital copy of the licensure databases for pharmacies and for pharmacists. There is nothing that needs clarification.”
PROCEDURAL HISTORY
On September 17, 2012, plaintiff filed a petition for alternative writ of mandamus naming the Board, Mr. Broussard and Mr. Finalet, both, personally and in their official capacities with the Board, as defendants. (This is the petition that the trial court granted that forms the basis of this appeal.) In addition to seeking production of the requested records, plaintiff prayed for court costs and attorney’s fees incurred in bringing the action, as well as statutory penalties. Plaintiff alleged that despite his initial and subsequently amended requests, the defendants failed to make the requested records available for copying, and attempted to condition the plaintiffs access to the records upon his | r,agreement to pay charges not authorized by law. Plaintiff further alleged that the defendants claim it will be months before the request can be fulfilled and that his request is “overly burdensome” and would cause the Board delays in the performance of its other duties, despite that similar requests by others, seeking substantially the same information, had been met within days of making the request. Plaintiff also contended that the Board had implied that it would let all licensees know that any delay in the processing of license applications was due to Mr. Johnson’s overly burdensome request, utilizing the Board’s resources for something other than fulfilling its ordinary obligations.
The defendants responded with an exception of prematurity, contending that the parties were engaged in “an on-going dialogue” and that they never received a reply from the plaintiff following the last communication on September 8, 2012, *1254 seeking clarification of the “magnitude” of plaintiffs request. They claim because they were awaiting a response, there had been no “final determination” by the custodian regarding the request, such that the suit filed by the plaintiff was premature.
Defendants also opposed the plaintiffs petition by asserting that the records sought by the plaintiff “do not exist” (i.e., not contained in the format requested by plaintiff) and therefore, they are not public records and cannot be produced. And in the alternative only, if the request is deemed to be for records that are public, defendants maintain that the production thereof would be burdensome and would cause an “unreasonable disruption of the operation of the Pharmacy Board’s legal responsibilities and duties” such that if production is ordered, the plaintiff should be required to inspect the documents after hours and may be charged reasonable reimbursement fees. Finally, the defendants maintain that their conduct in response to the plaintiffs request was not arbitrary, capricious, or unreasonable; therefore, costs, attorney’s fees, and penalties are not appropriate.
ACTION IN THE TRIAL COURT
Exception of Prematurity
The trial court heard both the exception and the mandamus request on the same date. After arguments on the exception, the trial court determined that there had been a 17valid public records request, and that no response to that request had been made, and denied the exception of prematurity.
Defendants’ Evidence
At the hearing on the merits of the petition for alternative writ of mandamus, the Board presented the testimonies of Mr. Broussard and Mr. Finalet, and submitted into evidence all emails pertinent to the plaintiffs request. According to both Mr. Broussard and Mr. Finalet, the information requested by the plaintiff could not simply be obtained by copying the files, because those files also contain confidential information, such as social security numbers, that would have to be redacted therefrom to preserve the integrity of the confidentiality owed by the Board. Because the files did not exist in the form requested by the plaintiff, defendants took the position that the records as requested did “not exist” and therefore, could not be produced. Moreover, Mr. Broussard testified that he had consulted with the Board’s database vendor who provided an estimated cost of $4,200.00 to produce the requested information with confidential fields being redacted. Mr. Broussard also testified that the Board was willing to provide the information to the plaintiff through the use of the Board’s vendor, given assurance that the integrity of the records was protected.
Plaintiff’s Evidence
The plaintiff introduced into evidence his initial request to the Board, the Board’s email responses, and correspondence between the Board and another individual, who made a very similar public records request to the Board in July 2012 (reflecting that, that request was honored approximately twenty days after it was made, in the form of an excel spreadsheet that provided all the information requested, at a total charge to the requesting party of $136.57 for time spent accumulating the data).
The plaintiff also called as a witness Mr. Burt Barrerre, tendered as an expert in the field of computer information technology, specifically relational databases, who testified that it was possible to make a copy of a whole database while leaving out specific items deemed to be confidential, and that he, personally, would be capable of doing so. 18Mr. Barrerre also testified that in the “I.T. world” such a task is not *1255 particularly complicated, and indeed, it was quite common for a vendor to perform such a task from an off-site location. He further testified that it should not cost anywhere near $4,000.00. In fact, he opined that the entire task should take no more than four hours, at $100.00 per hour, or a total of $400.00.
Judgment of the Trial Court
The trial court, giving detailed oral reasons, found that the plaintiffs request was for public records and that the defendants have not yet provided the information or any portion of the information requested. The court also stated:
I’m convinced that the State [Board] either through its consultant or on its own, has the ability to provide the information from the database that has been requested. If they would not like to give the entire database because it contains confidential information, they can certainly do the query search and provide the report that gives the information from their database that they possess.” The court further found incredulous the Board’s IT consultant’s estimate of $4,200.00 “to write a program ... when a guy can sit down and do a query search under specific tables in four hours, I think that they’re trying to jamb (sic) the state [Board] for some money.
Implicit in this statement is the trial court’s finding the plaintiffs expert testimony — that the information could be retrieved a much simpler, inexpensive way (i.e., in four hours, at $100.00 per hour)— more tenable than that of the Board’s computer consultant.
Therefore, the trial court ordered the mandamus maintained, and ordered the Board to comply with the plaintiffs request within ten days. It also ordered the plaintiff to reimburse the Board for the cost of the data recovery, but limited that reimbursement to an amount not to exceed $500.00. The trial court also assessed costs and attorney’s fees (in the amount of $4,000.00) incurred in the proceedings against the defendants.
THE APPEAL
Defendants appealed the judgment of the trial court contending the trial court erred in finding that the records sought by Mr. Johnson are public records subject to production pursuant to the Public Records Act. They alternatively maintain that the trial Incourt erred in capping the reimbursement costs imposed on the plaintiff for producing the requested information at $500.00, and also in awarding costs and attorney’s fees.
APPLICABLE LAW
Louisiana Constitution, Article XII, Section 3, provides: “No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.” (Emphasis added.) The provision of the constitution must be construed liberally and in favor of free and unrestricted access to the records, and that access can be denied only when a law specifically and unequivocally provides otherwise. Whenever there is doubt as to whether the public has a right of access to certain records, the doubt must be resolved in favor of the public’s right to see. To allow otherwise would be an improper and arbitrary restriction on the public’s constitutional rights. Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984); see also, Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979, p. 5 (La.7/1/97), 696 So.2d 562, 564.
The foregoing constitutional provision has been codified in the Louisiana Public Records Act, La. R.S. 44:1 et seq., which includes in its definition of “public records,” all documentary materials, include *1256 ing information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the performance of any function under the authority of the constitution or laws of this state. La. R.S. 44:IA(2)(a),
Any person of the age of majority may inspect, copy or reproduce, or obtain a reproduction of a public record except as otherwise provided in this Chapter or as otherwise specifically provided by law. La. R.S. 44:31A and B(l) and (2). The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian. La. R.S. 44:31B(3).
In Title Research, 450 So.2d at 937, the supreme court noted that under La. R.S. 44:31B(1), the person requesting the public records has the right to choose one of four options and “the choice of which optional right to exercise rests with the one requesting the records and not with the custodian.” (Emphasis added.) And this court, in St. Tammany Parish Coroner v. Doe, 2010-0946, p. 7 (La.App. 1 La.App. 10/29/10), 48 So.3d 1241, 1246, further held that nothing in the Louisiana Public Records Act specifically prohibits reproduction of public records by electronic format. This court cited the following passage from a third circuit case for support:
We live in an age of technology in which private individuals, as well as government, can use information technology to create astronomical numbers of documents. To allow [the public entity] to create such voluminous records using information technology and then deny the use of that same technology to the public reviewing those records would strike directly at the heart of the public’s fundamental right of access to public records that is guaranteed by the Louisiana Constitution. When confronted with public records of goliath proportions, the average citizen’s fundamental right of access would prove illusive if he is denied the opportunity to use the very technology which helped create the overwhelming amount of information. To reproduce over 13,000 e-mails on paper, when other safe, efficient, and reasonable means are available, is unnecessarily laborious, costly, wasteful, and conflicts with the legislative intent of making public records as available as possible.
Johnson v. City of Pineville, 2008-1234, p. 9 (La.App. 3 Cir. 4/8/09), 9 So.3d 313, 319-20.
Any person who has been denied access to a public record may institute proceedings for the issuance of a writ of mandamus (as was done in this case), injunctive or declaratory relief, together with attorney fees, costs and damages. La. R.S. 44:35A. Moreover, the custodian is statutorily mandated to “extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter.” La. R.S. 44:32A.
With regard to the type of access the person shall be allowed, and any reimbursement the custodian may charge therefor, the statute provides:
[N]othing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them *1257 by the public body having custody of such record, out of funds \ ^provided in advance by the person examining such record in other than regular office or working hours.
La. R.S. 44:32A. (Emphasis added.) Additionally, the custodian has authority to excise any non-public (confidential) information prior to giving access to the public record. La. R.S. 44:32B. However, simply because material requested may contain non-public records is not a reason for restricting access. Williams Law Firm v. Board of Supervisors of Louisiana State University and A & M College, 2003-0079, p. 6 (La.App. 1 Cir. 4/2/04), 878 So.2d 557, 563.
Finally, in any case in which a record is requested and a question is raised by the custodian as to whether it is a public record, the custodian is mandated to give the requesting party, in writing within three days of the request, notification of receipt of the request, of his determination and the reasons therefor. Such notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction. La. R.S. 44-.32D.
DISCUSSION/ANALYSIS
There is little question that the information requested by Mr. Johnson, by definition, is a public records request. As noted above, the established jurisprudence reflects that simply because a record or information is not stored or kept by the custodian in the format requested by the person requesting the information, does not render the public records non-public. Additionally, the jurisprudence further establishes that the inclusion of confidential information in otherwise public records also does not render those records “not public;” rather, the custodian may redact the confidential information before meeting said request. Therefore, we find no merit in the defendants’ arguments that the request was not for public records, or that they were unable to meet the request because it included confidential information.
Moreover, and as also noted above, the statute gives any person requesting public records the option of choosing one of four options for obtaining said records, one of which is to make a reproduction of the records, as the plaintiff seeks herein. The 112statute is clear and unambiguous in its grant of these alternate rights, and it also is clear that the choice of which optional right to exercise rests with the one requesting, and not with the custodian. La. R.S. 44:31; Title Research, 450 So.2d at 937.
While it is the duty of the custodian to preserve the public records and to ensure that nobody alters or destroys the records (see La. R.S. 44:32A), this vigilance by the custodian must be reasonable, and it must be by those means that are least intrusive on the right of access. Title Research, 450 So.2d at 937-38.
Finally, the evidence presented wholly supports the trial court’s conclusion that the Board has, both, the ability and the capability to extract whatever confidential information may be contained in the requested documents, as well as the capability to extract the requested information from its existing database and copy that for the plaintiff. The testimony of the two experts differed greatly in the estimated cost for accessing the database, excising the confidential information, and producing the requested copy of the database for the plaintiff. The plaintiff’s expert testified it could be done in no more than five hours, at $100.00 per hour, at a total cost of $400.00. On the other hand, the Board’s in-house computer vendor estimated the task would cost up to $4,200.00. The trial court, apparently believing the plaintiffs *1258 expert, and finding the Board’s estimate unreasonably high, ordered the plaintiff to pay reimbursement costs of up to $500.00.
CONCLUSION
At oral argument in this matter, however, counsel for plaintiff emphasized to this court his client’s position that this dispute is not about the costs, but rather about obtaining the requested public records. In pursuit of this ultimate goal, counsel for plaintiff stated in open court that plaintiff would be willing to pay up to the $4,200.00 estimate if that was what it took to get the requested material.
In light of this concession by the plaintiff, together with the statutory language, allowing the custodian to ensure the integrity of its systems, and the confidentiality of the information contained therein, we amend the trial court’s judgment to order plaintiff to pay reimbursement costs in an amount between $500.00 and not to exceed 11S$4,200.00, as reasonably warranted by the actual efforts taken to reproduce the requested materials.
In all other respects, we find the trial court did not err and the judgment, as modified, is hereby affirmed. Costs in the amount of $1,360.50 are assessed to the defendant, the Louisiana Board of Pharmacy.
AMENDED; AFFIRMED AS AMENDED.

. This is an identifier number assigned by the National Council for Prescription Drug Programs.

. It appears the Board has recanted this representation suggested by Mr. Finalet in this response email. In a subsequent deposition of Mr. Finalet taken on September 27, 2012, Mr. Finalet testified that he later clarified the issue with a DEA agent, who after conferring with her supervisors, told Mr. Finalet that the DEA numbers for the pharmacies are public *1252 record and not exempt from public record disclosures.