EDWIN A. LOMBARD, Judge.
|tThe issue before the court in this appeal is whether the trial court erred in finding that (1) the defendant/appellee, the Louisiana Society for the Prevention of Cruelty to Animals (“LSPCA”), was not a quasi-public entity .such that it is subject to the Louisiana Public Records Law[1] and (2) that, even assuming the LSPCA was a quasi-public entity, all reporting obligations under the Public Records Law had been met when it complied with reporting requirements of CEA, After review of the record in light of the applicable law and arguments of the parties, we find that the trial court erred in both parts and, accordingly, reverse the trial, court judgment granting the LSPCA’s motion to dismiss with prejudice the petition for a writ of mandamus filed by the plaintiff/appellant, the New Orleans Bulldog Society a/k/a New Orleans Bully Rescue (“the Bulldog Rescue”).

Relevant Facts and Procedural History

The Bulldog Rescue is a nonprofit corporation organized under Louisiana law to advocate for dog welfare in New Orleans and elsewhere. To determine the best use of its limited resources in limiting the number of dogs euthanized 12annually, the Bulldog Rescue sought information related to the dogs euthanized by the LSPCA, sending a public records request on May 29, 2015, to the City of New Orleans with a copy of the request sent directly to the LSPCA. The Bulldog Rescue itemized its request as follows: Requests 1-32 sought specific information as to the LSPCA definitions, policies, procedures, and outcomes related to the evaluation, adoption, and/or euthanasia of surrendered/stray animals in control of the LSPCA; Requests 33-34 related specifically to an Cane Corso named Leatrice euthanized by the LSPCA in December 2014; Request 35 requested documents related to the “staff. hours spent by LSPCA Animal Control Officers travelling, waiting, and appearing in court in Orleans Parish; and Requests 36-37 sought documents and emails regarding the Bulldog Rescue’s “Animal Court” proposal to streamline animal-related cases before the municipal court in New Orleans.
By letter from the City Attorney’s office dated June 4, 2015, the City responded that the City was not custodian of these records and that the records request should be directed to the LSPCA. Accordingly, on June 5, 2015, the Bulldog Rescue sent the public records request directly to the LSPCA. On June 10, 2015, the LSPCA responded by letter (signed by LSPCA Chief Executive Officer Ana Zoril-la), declaring that the LSPCA was not a “public body” and, thus, not subject to the Public Records Law. According to Ms. Zorilla, the only reporting required of the LSPCA was delineated in the Cooperative Endeavor Agreement (“CEA”) between the LSPCA and City of New Orleans and that report | ¡¡(fulfilling the CEA reporting requirements) had been submitted to the City and was available -through the City Attorney’s office.
*999 On July 22, 2015, the Bulldog Rescue filed the instant petition for writ of mandamus in the district court, seeking a declaratory judgment and injunctive relief pursuant to the Public Records Law. In response, the LSPCA filed exceptions of unauthorized use of summary proceeding and no cause of action, requesting that the plaintiffs petition be dismissed with prejudice pursuant to La. Code Civ. Proc. art. 1672. In support of its exceptions, the LSPCA attached: (1) an affidavit by Ms. Zorilla; and (2) a copy of the CEA.
After a hearing on September 17, 2015, the trial court orally granted the defendants’ oral motion to dismiss the plaintiffs petition for writ of mandamus, finding (1) that the LSPCA was not a quasi-public entity under the Public Records Law and (2) that, even assuming the LSPCA was a quasi-public entity, all reporting obligations under the Public Records Law had been met when the LSPCA complied with the CEA reporting requirements. The trial court issued its written judgment on September 28,2015.
The Bulldog Rescue filed this timely devolutive appeal.

Assignment of Error 1

The Bulldog Rescue argues that the trial court erred in finding that the LSPCA is not a quasi-public nonprofit corporation under the Public Records Law and, therefore, not subject to the public right of access to its records. We agree.

14Applicable Law

Public access to public records is a fundamental right guaranteed by our state constitution. La. Const, art. 12 § 3. This constitutional right must be construed liberally in favor of free and unrestricted access to the records and access can be denied only when a law, specifically and unequivocally, provides otherwise. Id. Any doubt as to the public’s right of access to certain records must be resolved in favor of the public’s right to see as, to allow otherwise, would be an “improper and arbitrary restriction on the public’s constitutional rights.” Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984); see also State ex rel Guste v. Nicholls College Foundation, 564 So.2d 682, 686 (La.1990) (in determining whether records are within scope of Public Records Act, “we must keep in mind ... that the law favors a liberal construction of the public records law so as. to enlarge rather than restrict aecess to public records by the public”) (citations and internal punctuation omitted); Alliance for Affordable Energy v. Frick, (La.App. 4 Cir. 5/28/97), 96-1763, p. 17, 695 So.2d 1126, 1136 (Public Records Law is intended to enforce the public’s right to public records “in the most expansive and unrestricted way possible.”) (quoting Title Research Corp., supra); see also Bartels v. Roussel, 303 So.2d 833, 836 (La.App. 1 Cir.1974), writ denied 307 So.2d 372 (La.1/31/75) (Public Records Law was “obviously intended to implement inherent right of public to be reasonably informed as to manner, basis, and reasons upon which governmental affairs are conducted”).
IfiFor purposes of the Public Records Law, “the phrase ‘public body" means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function ....” La. Rev. Stat. 44:1(A)(1) (emphasis added). Moreover, the definition of what' constitutes a public record is all inclusive: “[a]ll books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, *1000 recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or Characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mtmdate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are “public records,” except as otherwise provided in this Chapter or the Constitution of Louisiana. La. Rev. Stat. 44:l(A)(2)(a).
|(“Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees,” La. Rev. Stat. 44:31(A), and the “burden of proving that a public record is not subject to inspection, copying, or reproduction shall pest with the custodian. La. Rev. Stat. 44:31(B)(3) (emphasis added).[2]

Record Evidence

The affidavit by Ms. Zorilla (submitted in support of the LSPCA exceptions to the petition for writ of mandamus) asserts in pertinent part that LSPCA is a private non-profit unaffiliated with any public entity, that “at no time” has the LSPCA “ever been responsible for or obligated to the performance of any governmental function or duty beyond those which it has voluntarily agreed to perform” pursuant to its “Cooperative Endeavor Agreement (“CEA”) with the City of New Orleans to provide professional animal control services ....” wherein, in exchange for its professional animal control services, the City pays the LSPCA $153,870 per month.
The copy of the 2015 CEA, submitted by the LSPCA in support of its exceptions, clearly states that the LSPCA shall provide animal control services “pursuant to the provisions of Chapter 18 of Code of Municipal Ordinances for the City (“the Code”) relating to animal control and shelter services; ”[3] and that, in |7addition to “continuous patrols through the City,” [4] responding to emergency calls involving a complaint of an animal bite or attack or an animal in immediate danger[5], the LSPCA duties under the agreement include [investigating reports of violations of the provisions of Chapter 18, Section 18-1 through 18-841 inclusive, of the Code relating solely to cruelty, animal control and regulation and, when warranted by the facts and circumstances presented to the Society, issuing citations to any person who is or whose animal is in violation of any such provision.”[6] Under the agreement, the LSPCA is required to provide “animal control facilities” a/k/a “the Shelter and provide “[s]helter services” includ *1001 ing “receiving unwanted animals and impounding, housing, feeding, redemption, adoptions, humane euthanasia and disposal of animals.”[7] The CEA also acknowledges that under prior agreements the City provided the LSPCA with animal control vehicles[8] and that the City would continue to provide fuel[9] and maintain these vehicles during the term of the CEA.[10] In addition, the CEA provided that the City and the LSPCA would work together in “review[ing] and revising] municipal ordinances involving domesticated animals.”[11] Finally, in exchange for the LSPCA assuming the City’s municipal animal control obligations, the City agreed to pay the LSPCA a monthly amount of $153,870, an annual payment of $1,846,440.
|sMs. Zorilla testified at the hearing that, under the Municipal Code, the City is required to provide animal control services, including impounding animals. She conceded that, in accordance with the terms of the pertinent CEA, the LSPCA assumes these City responsibilities in exchange for financial compensation. Ms. Zorilla also conceded that uniformed LSPCA officer investigate and issue citations to people throughout the city, requiring them to appear in municipal court. Finally, Ms. Zorilla conceded that the LSPCA had the authority to impound animals and. that a part of the duty of, a LSPCA “humane officer” was to appear in court and testify in support of the citations and summons.

Analysis

The constitutional right to public records is one that must be construed liberally in favor of free and unrestricted access to public records with any doubts being resolved in favor of public access. See La. Const. art. 12 § 3; Title Research Corp., supra; Alliance for Affordable Energy, supra., Bartels, supra. There is no statutory or precedential authority to support the claim that the LSPCA is exempt from the Public Records Law, nor is such an exemption stated in the CEA. Rather, as evidenced by the CEA and Ms. Zorilla’s affidavit, by contract the LSPCA serves as the municipal instrumentality to provide mandated animal control services; in other words, the LSPCA is invested with the authority to investigate compliance with municipal code violations related to animals and take relevant action. Ms. Zorilla characterizes this service as “voluntary,” but the LSPCA receives an annual compensation of almost two million dollars for providing the | services and, even accepting that this amount is only a percentage of the LSPCA budget, it is a substantial sum of money derived from public funds. According to the CEA, the City provided vehicles to the LSPCA and continues to fuel and maintain these City-provided vehicles. Finally, in wearing uniforms while investigating municipal violations, the appearance of the LSPCA officers is clearly designed to indicate a quasi-official status and, in serving municipal citations and appearing in municipal court regarding municipal code violations, the LSPCA officers clearly operate under the color of City authority. Thus, the old adage about walking and talking like a duck appears applicable here: the LSPCA performs municipal functions on behalf of the municipal government and, in so doing, is both compensated by the municipality and acts under the auspices of the municipality. Under these circumstances, the LSPCA is *1002 clearly a quasi-public entity subject to the Public Records Law.

Assignment of Error 2

The Bulldog Rescue also argues that it was error for the trial court to rule that, even assuming the LSPCA is subject to the public records law, its public records reporting obligations are met by compliance with the CEA reporting requirement. We agree.
The essence of this issue is whether the constitutional right to public records can be circumscribed by a contract entered into between a municipality and the entity contracted to perform mandated municipal services. There is no statutory or | ^jurisprudential authority to support such a proposition and we decline to establish such a precedent in this ease.
The Louisiana Municipal Association, appearing as amicus curiae, is concerned that a ruling in this case could be detrimental to municipalities if it is construed to mean that a private entity becomes subject to the Public Records Act solely by entering into a contract with a municipality. Thus, we emphasize that our holding in this case is specific to these circumstances wherein an entity (the LSPCA) acts as an instrumentality of the municipality (the City of New Orleans) in rendering mandated (by the Municipal. Code ordinances) municipal services such as investigating municipal code violations, seizing animals and serving citations in the course of its investigations, euthanizing animals, using vehicles maintained and fueled (as well as initially purchased) by the municipality, and whose uniformed officers appear in court to testify regarding municipal violations. These circumstances are not present when an entity merely provides services to a municipality, rather than acting as an instrumentality of the municipality to provide mandated services to the public.
To reiterate, the Public Records Law cannot be circumscribed by a contract. The CEA is a contractual agreement concocted between the City, a public entity, and the LSPCA, a quasi-public entity, to provide mandated city services. The CEA requires the LSPCA to only provide animal control statistics, including the number of animals euthanized, by invoice presented to the City. '• In contrast to this very limited reporting requirement, what constitutes a public record under La. Rev. JjjStat. 44:l(A)(2)(a) is all inclusive: anything that has been used, prepared, or possessed for use in the conduct of any business, duty or function that is performed under the authority or in accordance with the mandate, ordinance of regulation of a public body (the City) or for business, duty, or function that was performed for money received under the authority of state laws or constitution. Clearly, the limited contractual reporting requirements of the CEA is not the equivalent of a “public record” as defined by La. Rev. Stat, 44:l(A)(2)(a) and, as such, the LSPCA’s entity’s compliance with its contractual reporting requirement to the City does not satisfy its obligations under the Public Records Law.
We have reviewed de novo the public records- request submitted to the LSPCA by the Bulldog Rescue. The request focuses primarily on obtaining very specific information relating to the determination of which animals are euthanized under the authority of the City. The Bulldog Rescue, like the SPCA, is a nonprofit organized for the protection and welfare of animals and, thus, the information sought pertaining to all aspects of the LSPCA decision process and related polices leading to animal euthanasia under City authority is tailored to the Bulldog Rescue *1003 purpose. Likewise, the additional public record requests pertaining to the disposal of a specific dog (Leatrice the Cane Corse in December 2014), as well as documents related to the Bulldog Rescue proposal for streamlining court proceedings related to LSPCA-issued citations, are also related to the Bulldog Rescue mission.
liP.Notably, the LSPCA does not deny the existence of guidelines or other criteria created to insure that animals are not arbitrarily euthanized, nor does it deny taking action with regard to Leatrice or reviewing the Bulldog Rescue’s proposal to streamline court proceedings. Likewise, the LSPCA does not argue that the public records request is not narrowly tailored to elicit information relevant to the Bulldog Reseué mission, nor does it indicate why it is reluctant to release the requested information. It is undisputed that the animal control functions performed by the LSPCA are pursuant to its contract with the City and, therefore, under the authority and in accordance with the mandate of the City and municipal ordinances. Likewise, it is undisputed that the LSPCA is compensated by the City for performing these municipal services. Nonetheless, the LSPCA has' offered no reason (beyond its failed argument that it is not subject to the Public Records Law) for refusing to provide public access to its records. As such, the LSPCA has failed to meet its burden (as custodian of the records sought) of proving that the documents sought by the Bulldog Rescue are not subject to inspection, copying, or reproduction under the Public' Records Act. See La. Rev. Stat.44:31(B)(3). Therefore, the trial court clearly erred in dismissing the Bulldog Rescue petition for a writ of mandamus.

Conclusion

The judgment of the trial court is reversed.
REVERSED.

. See La Rev. Stat. 44:1.1 (short title is "Pub-lie Records Law”)

.See also La. Rev. Stat. 44:34 (When such public record is “not in the custody or control of the person to whom the application is made, such person shall promptly certify this - in writing to the applicant, and shall in the certificate state in detail to the best of his knowledge and belief ... its location, what person then has custody of the record ... "and other information that may facilitate the public’s right to. access public documents).

. CEA provision 2.1.

. CEA provision 2,2.1.

. CEA provision 2.2.2.

. CEA provision 2.2.5.

. CEA provision 2.3.

. CEA provision 3.2.

. CEA provision 3.2.2.

. CEA provision 3.2,; CEA provision 3.3.

. CEA provision 2.10.