# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #026

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of May, 2017**, are as follows:

**BY CRICHTON, J.**:

2016-C-1809        NEW ORLEANS BULLDOG SOCIETY v. LOUISIANA SOCIETY FOR THE
                   PREVENTION OF CRUELTY TO ANIMALS, ET AL. (Parish of Orleans)

                   Through the discharge of its duties and responsibilities set
                   forth in the CEA with the City of New Orleans, as well as the
                   receipt of public money as remuneration for such services, we
                   find the LSPCA is functioning as an instrumentality of a
                   municipal corporation, and is therefore subject to the Louisiana
                   Public Records Law, La. R.S. 44:1 et seq.  We therefore affirm
                   the court of appeal in that regard.  We further find that the
                   reporting requirements contained in the CEA do not satisfy the
                   Public Records Law, as the requirement for access to public
                   records cannot be circumscribed by contract.  The LSPCA is
                   required to disclose all documents specifically related to the
                   discharge of its duties and responsibilities outlined in the CEA
                   with the City of New Orleans, and we remand to the district court
                   to determine which documents satisfy that description.
                   AFFIRMED AND REMANDED.

                   HUGHES, J., dissents in part with reasons.

## SUPREME COURT OF LOUISIANA

## No. 2016-C-1809

## NEW ORLEANS BULLDOG SOCIETY

## VERSUS

## LOUISIANA SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, ET AL.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, PARISH OF ORLEANS

**CRICHTON, J.**

We granted the writ in this matter to determine whether the Louisiana Society for the Prevention of Cruelty to Animals ("LSPCA") is subject to the Louisiana Public Records Law. *New Orleans Bulldog Society v. Louisiana Society for the Prevention of Cruelty to Animals, et al.,*16-1809 (La. 1/9/17), ___ So.3d ___. More specifically, we must determine whether the LSPCA, by virtue of its Cooperative Endeavor Agreement ("CEA") with the City of New Orleans to provide animal control services as mandated by the New Orleans Municipal Code, is an instrumentality of a municipal corporation such that it must comply with La. R.S. 44:1 *et seq.* For the reasons that follow, we affirm the court of appeal, and find that the LSPCA, through its function of providing animal control services for the City of New Orleans, is an instrumentality of the City of New Orleans and must comply with the Public Records Law as set forth herein.

### FACTS AND PROCEDURAL HISTORY

The New Orleans Bulldog Society ("Bulldog") is a nonprofit corporation operating under Louisiana law, and founded in order to advocate for the welfare of dogs in New Orleans and elsewhere. The Louisiana Society for the Prevention of Cruelty to Animals ("LSPCA"), first chartered in 1888, is a private non-profit

1

corporation recognized by the Internal Revenue Service as a private charitable 501(c)(3) nonprofit corporation. According to the affidavit of Ms. Ana Zorilla, the Chief Executive Officer of the LSPCA, the LSPCA's mission is to "advocate for the animals of Louisiana by advancing their welfare, promoting their interests, and fostering the human-animal bond through innovative programs, education, and services." The LSPCA also provides animal control services for the City of New Orleans ("the City"), as required by Chapter 18 of the City of New Orleans Code of Ordinances. In order to facilitate those services, the LSPCA maintains a "Cooperative Endeavor Agreement" with the City, which states that "[t]he Society shall provide the following service to the City. . . . [f]ield and shelter services for the City in accordance with the terms and conditions of the Agreement and, except as otherwise provided herein, pursuant to the provisions of Chapter 18 of the Code of Municipal Ordinances for the City. . . . relating to animal control and shelter services."[1] The CEA specifically sets forth the duties of the LSPCA to include, among others, continuous patrols with radio contact throughout the City; responding to emergency calls involving animals or threat to human life; investigating reports of violations of the provisions of Chapter 18; maintaining veterinary services; spaying and neutering, rabies vaccinations, and reviewing animal related ordinances with the City.

On May 29, 2015, Bulldog sent a public records request to the City of New Orleans, pursuant to La. R.S. 44:1 *et seq.* In the request, Bulldog set forth several inquiries regarding LSPCA's standard operating procedures for evaluating surrendered and stray dogs in terms of determining eligibility for adoption,

---

[1] Chapter 18 of the Code of Ordinances, entitled "Animals," sets forth numerous provisions related to animal control, which include impoundment of animals, licensing of animals, spaying and neutering of dogs, rabies control, as well as the various fines and penalties which can be imposed for violations of the Code.

documents related to those dogs and cats considered "adoptable" and "unadoptable," specific documents regarding euthanized cats and dogs in certain years, and documents and information relating to LSPCA's participation in court proceedings in Orleans Parish. The request also sought information related to the transfer or euthanasia of a specific animal named Leatrice. The City responded on June 4, 2015, informing Bulldog that it is not the custodian of the records Bulldog sought to obtain, and that the request should be forwarded to the LSPCA.

Bulldog forwarded its request to the LSPCA on June 5, 2015, to which the LSPCA responded that it is not a "public body" under the Public Records Law, and is therefore exempt from the statute. Although the LSPCA acknowledged its CEA with the City, it stated that the City maintains all information related to the reporting requirements of the CEA.

On July 22, 2015, Bulldog filed a petition for damages and a writ of mandamus, asserting that, through its agreement with the City, the LSPCA performs a variety of governmental functions that the City is required to discharge as a matter of law. As such, Bulldog asserted the LSPCA is subject to the Louisiana Public Records Law. In response, the LSPCA filed exceptions of unauthorized use of a summary proceeding and no cause of action. The LSPCA attached the affidavit of Ms. Ana Zorilla,2 who asserted it is a private nonprofit organization, not formed by any public body or pursuant to any legislative or statutory authority. Ms. Zorilla further stated that the LSPCA is not obligated to perform any governmental function beyond what is set forth in the CEA, and the monthly sum of $153,870, paid by the City to the LSPCA, comprises only a

---

2 The LSPCA also provided the affidavit of Ms. Charlotte Parent, who serves as the Director of Health for the City of New Orleans. She stated the LSPCA has complied with all reporting requirements set forth in the CEA from 2013 to the present, as Bulldog had been provided with the LSPCA's monthly operational reports related to animal control services, which are required pursuant to the CEA. Moreover, Ms. Parent asserted that the referenced operations reports are the only public records which exist related to the animal control services provided to the City by the LSPCA.

3

portion of the LSPCA's total budget. The LSPCA also emphasized that even if it the court found that a public record request may be directed to it, the scope of that request should be limited to those documents that are prepared and maintained pursuant to the CEA.

Following a hearing on September 17, 2015, the trial court dismissed Bulldog's writ of mandamus and request for preliminary injunction, and granted the LSPCA's Motion for Involuntary Dismissal. In her written reasons for judgment, the trial court found the LSPCA is not a "quasi-public" entity subject to the Public Records Law, as the LSPCA is a private non-profit entity with a private board whose mission is independent from the mission of any governmental entity. Furthermore, the trial court concluded the LSPCA was formed as a private non-profit organization and only 12% of its income is derived from its CEA with the City. The trial court also ruled that by virtue of its reporting requirement to the City under the CEA, the LSPCA had complied with all reporting requirements as set forth therein.

The court of appeal reversed, finding that the record establishes the LSPCA was acting as an instrumentality of the City in rendering mandated municipal services such as investigating municipal code violations, seizing animals and serving citations in the course of its investigations, euthanizing animals, using vehicles maintained and fueled by the municipality, and employing uniformed officers who appear in court to testify regarding these violations. Therefore, by virtue of its function in complying with the CEA, the court of appeal concluded the LSPCA is a quasi-public entity subject to the Public Records Law. *New Orleans Bulldog Society v. Louisiana Society for the Prevent of Cruelty to Animals, et al.*, 15-1351 (La.App. 4 Cir. 9/7/16), 200 So.3d 996.

The appellate court also found the trial court erred in ruling that even assuming the LSPCA is subject to the Public Records Law, its reporting obligations were met by compliance with the CEA reporting requirements. The appellate court concluded that the Public Records Law "cannot be circumscribed by contract," as the Public Records statute, La. R.S. 44:1 *et seq.*, is intended to be all inclusive, and not limited to certain contractual reporting requirements. Consequently, the court of appeal ruled that the LSPCA failed to meet its burden (as custodian of the records sought) of proving the documents sought by Bulldog are not subject to inspection under the Louisiana Public Records Law. For the reasons that follow, we agree.

## DISCUSSION

Article XII, § 3 of the Louisiana Constitution provides: "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." Moreover, "[t]he right of access to public records is a fundamental right guaranteed by La. Const. art. XII, § 3 of the Louisiana Constitution, and whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access." *Landis v. Moreau*, 00-1157, p. 4 (La. 2/21/01), 779 So.2d 691, 694, citing *Title Research Corp. v. Rausch*, 450 So.2d 933 (La. 1984). The Louisiana Public Records Law, La. R.S. 44:1 *et seq.*, provides, in pertinent part:

> A. (1) As used in this Chapter, the phrase "public body" means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function, or an affiliate of a housing authority.

(2)(a) All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.

> (b) Notwithstanding Subparagraph (a), any documentary material of a security feature of a public body's electronic data processing system, information technology system, telecommunications network, or electronic security system, including hardware or software security, password, or security procedure, process, configuration, software, and code is not a "public record".

(3) As used in this Chapter, the word "custodian" means the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records.

\* \* \*

It is well established that legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *See, e.g., Dunn v. City of Kenner*, 15-1175, p.4 (La. 1/27/16), 187 So. 3d 404, 409-10. See also La. R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. R.S. 1:4. The starting point for interpretation of any statute is the language of the statute

6

itself. *See, e.g., Dunn*, 15-1175, p.4, 187 So. 3d at 410. When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. *See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-0193, p. 10 (La. 1/19/11), 56 So. 3d 181, 187-88 (quotation omitted). In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*

This Court has consistently held that the Public Records Law should be construed liberally in favor of free and unrestricted access to public documents. As stated above, whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see; to allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights. *Shane v. The Parish of Jefferson*, 14-2225, p. 9-10, (La. 12/8/15), 209 So.3d 726; *In re Matter Under Investigation*, 07–1853 (La.7/1/09), 15 So.3d 972, 989; *Capital City Press v. East Baton Rouge Parish Metropolitan Council*, 96–1979 (La.7/1/97), 696 So.2d 562, 564; *Title Research Corp. v. Rausch*, 450 So.2d 933, 937 (La. 1984). Furthermore, throughout the public records statutes, "[t]here was no intent on the part of the legislature to qualify, in any way, the right of access." *Shane v. The Parish of Jefferson*, 14-2225, p. 9, (La. 12/8/15), 209 So.3d 726, 734, citing *Landis v. Moreau*, 00-1157, p. 4-5 (La. 2/21/01), 779 So.2d 691, 694-5 (citing *Title Research Corp. v. Rausch*, 450 So.2d 933, 937 (La. 1984)).[3]

---

[3] *See also*, La. R.S. 44:4.1, which provides in pertinent part:

In addressing the issue we are presented with today, namely, whether La. R.S. 44:1 applies to the LSPCA under these circumstances, we find the court of appeal correctly focused on the *function* the LSPCA serves as an "instrumentality" of the City of New Orleans, through its CEA to provide animal control services. As La. R.S. 44:1 states, a public body subject to the Public Records Law includes ". . . .any other *instrumentality* of state, parish, or municipal government,[4] including a public or quasi-public nonprofit corporation designated as an entity to *perform a governmental or proprietary function*. . . ." (emphasis added). As set forth in the CEA, and correctly noted by the court of appeal, the LSPCA performs certain functions as an instrumentality of the City of the New Orleans. In other words, the LSPCA's duties (as well as privileges it enjoys) in providing animal control services for the City are at the behest of the municipality and arising out of their outlined agreement to do so. The LSPCA acts under color of City authority through its enforcement of Chapter 18 infractions, issuance of citations, and appearance in court on related matters of animal control. More specifically, the evidence in the record establishes that, by virtue of the CEA, the LSPCA is vested with authority to investigate compliance with municipal code violations related to animals and to take appropriate action. According to the CEA, the LSPCA must provide "shelter services for the City" which include "receiving unwanted animals

---

A. The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people's awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. *Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect.*

\*\*\*

(emphasis added)

[4] Article 6, § 44 of the Louisiana constitution defines "municipality" as "an incorporated city, town, or village."

and impounding, housing, feeding, redemption, adoption, human euthanasia and disposal of animals"; responding to emergency calls involving animals; investigating reports of violations of Chapter 18 of the Municipal Code, and issuing citations to any person who is in violation of any provision. According to the CEA, the LSPCA must also require all animals adopted through it to be spayed and neutered. The CEA further states that the City has provided vehicles to the LSPCA under prior agreements, and those vehicles will "remain with the Society." There is also a provision in the CEA providing that the City shall continue to provide the LSPCA with fuel, repairs, and necessary maintenance for those vehicles. There is no dispute the LSPCA has performed, and continues to perform, these functions (and enjoyed the benefit of City vehicles and fuel) on behalf of the City of New Orleans. For these reasons, the court of appeal correctly found the LSPCA to be an instrumentality of the municipality through its execution of the CEA, and is therefore subject to the Public Records Law as it relates to its specific functions and duties under the CEA.

This court has previously examined the function of an entity to determine whether it is subject to the Public Records Law. In *State of Louisiana, et al. v. Nicholls College Foundation and Donald L. Peltier*, 564 So.2d 682 (La. 1990), this Court was tasked to determine whether the Nicholls College Foundation, a nonprofit corporation, was a "public body" subject to the Public Records Law. In that case, the Inspector General sought to examine its financial records when the Foundation had received a "donation" of "public funds" from the Nicholls State University Alumni Federation, also a non-profit corporation. The Court ultimately determined through various factors of function (and some economic) that the Alumni Federation is a public body under the Public Records Law. Specifically, the *Nicholls* Court found that the Federation enjoyed a "close affiliation with

Nicholls State University," as demonstrated by its location on campus in a public building for which it pays nominal rent, and by its use of state civil service employees to run its office. *Id*. at 687. Furthermore, the "Alumni Office" is a line-item in the budget for the University, through which the Federation's employees are paid. The Federation states in its Articles of Incorporation that its purpose is to promote the University, which was created for the purpose of providing public education, which is a governmental function. Thus, because of this relationship with the University, and adhering to our settled notion that that the Public Records Law favors a liberal construction of the public records law so as to enlarge, rather than restrict, public access to public records, the Court determined the Federation is a "quasi-public" nonprofit corporation "designated as an entity to perform a governmental or proprietary function," which therefore made it subject to the Public Records Law.[5]

---

[5] It is important to note the distinction of this case from this Court's opinion in *Property Insurance Association of Louisiana v. Theriot*, 09-1152 (La. 3/16/10), 31 So.3d 1012, wherein the Court concluded that the Property Insurance Association of Louisiana was a private entity, finding it fit under four factors previously iterated in *State v. Smith*, 357 So.2d 505 (La. 1978), which were created to determine an entity's public or private character:

(1)      Whether the entity was created by the legislature;
(2)      Whether its powers were specifically defined by the legislature;
(3)      Whether the property of the entity belongs to the public; and
(4)      Whether the entity's functions are exclusively of the public character and performed solely for the public benefit.

The *Theriot* court noted that while the *Smith* case did not specify that all four factors must be met in order to find that an entity was public, they did so by "implication." Id., 09-1152, p. 3, 31 So.3d at 1015. In *Theriot*, however, the Court concluded that "all four factors must be present in order for a court to determine that an entity is public." *Id.*

The *Theriot* case has not been cited often since its publication, but this Court has as recently as 2013 applied the factors set forth in *Theriot* and *Smith*, to find that the Louisiana High School Athletic Association ("LHSAA") is a private entity, created by a group of high school principals who wanted to better regulate and develop the high school interscholastic athletic program in Louisiana. In *Louisiana High School Athletics Ass'n Inc. v. State*, 12-1471 (La. 1/29/13), 107 So.3d 353, this Court ruled that not only was the LHSAA not created by the Legislature, its powers are specified in its articles of incorporation, as filed with the Secretary of State. Finding that the LHSAA already had not met two of the four *Smith* factors, the Court concluded it was a private entity, not subject to the Open Meetings Law.

We find, however, both *Theriot* and the *LHSAA* opinions are distinguishable, as they did not involve the Public Records Law, nor did they involve a contract with a municipality

10

In addition to the LSPCA serving as an instrumentality of the City through its functions performed through the CEA, we also take note of the public money paid by the City to the LSPCA. As discussed above, the LSPCA, in exchange for the assumption of the City's municipal animal control obligations, receives from the City a monthly amount of $153,870, which totals an annual payment of $1,846,440. The court of appeal noted that while this amount is only a percentage of the LSPCA budget, it is still a substantial sum of money derived from public funds. We agree.[6] As mentioned, Louisiana courts have held that the Public Records law must be liberally interpreted so as to extend rather than restrict access to public records by the public. *C.B. Dutton v. William J. Guste, Jr.,* 395 So.2d 683, 685 (La. 3/2/81). In keeping with that statutory interpretation, and contrary to the defendant's assertion that it is not primarily funded by public funds, we find that the use of public money in this context triggers the Public Records Law. More specifically, it is not the amount of money which is of concern, it is only that the money provided by the City to the LSPCA in exchange for its animal control services under the CEA is derived from the taxpayers. Therefore, the public has a fundamental right to know how that money is spent by the LSPCA through its animal control services outlined in the CEA. Any finding otherwise would be in contravention to the well-established principles of liberal construction of the Public Records Law.[7]

---

specifying that the entity perform a public purpose on behalf of a municipality, such as the LSPCA did in this instance. Moreover, it is undisputed from the record that the LSPCA is a private entity for purposes other than this Court's holding herein.

[6] In so holding, however, we specifically note that the consideration of public money in this type of inquiry will be on a case-by-case basis, and we decline to set a specific sum which would require application of the Public Records Law in this context.

[7] We emphasize that the applicability of the Public Records Law to groups similarly situated as the LSPCA will be fact-specific. The nature of whether any entity is an instrumentality as set forth in this analysis should be specifically tailored to the facts at hand. Indeed, the LSPCA may

11

We must also address the defendant's assertion that if it is found to be subject to the Public Records Law, it has satisfied all reporting obligations by producing documents related to its CEA with the City. The court of appeal declined to accept this argument, finding the trial court was in error. We agree. The CEA states that the LSPCA must submit monthly invoices, program reports, and monthly budgets to the City. The LSPCA, under the CEA, must also maintain records and report the monthly number of animals, including descriptions of each animal, date and manner of disposal, treatment received (including spaying and neutering), and various fees and charges related to those animals. The CEA also requires that the LSPCA maintain records and provide a statement of actual expenses involved under the CEA. Although the LSPCA asserts these reporting requirements satisfy the Public Records Law, we agree with the court of appeal's finding that the Public Records Law cannot be circumscribed by contract. As the court of appeal correctly notes, the Public Records Law is purposefully broad and "all inclusive," *Bulldog*, 15-1351, p. 11, 200 So.3d at 1002, whereas the reporting requirements in the CEA are narrowly delineated. La. R.S. 44:1(A)(2)(a) defines a "public record" as follows:

> (2)(a) All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been **used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed** by or under the authority of the constitution or laws of this state, or **by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid**

*not* be deemed a quasi-public body or instrumentality under different facts in a different case for purposes of La. R.S. 44:1.

**by or under the authority of the constitution or the laws of this state, are "public records",** except as otherwise provided in this Chapter or the Constitution of Louisiana.

(emphasis added)

We do not find that the limited contractual reporting requirements in the CEA between the LSPCA and the City constitute compliance with the Louisiana Public Records Law, and affirm the court of appeal in this regard.[8] As discussed above, the Public Records Law was enacted to avoid "arbitrary restriction on the public's constitutional right" to "see," and there should never be any qualification on that right of access. *See Shane v. The Parish of Jefferson*, 14-2225 (La. 12/8/15), 209 So.3d 726. However, in terms of documents to be released under the Public Records Law in this case, we also limit this holding to only those documents which pertain to the LSPCA's functions, duties, and responsibilities to enforce Chapter 18 of the Municipal Code, as outlined in the CEA with the City of New Orleans. We therefore remand this matter to the district court to determine which documents within the LSPCA's possession qualify as such.

**CONCLUSION**

Through the discharge of its duties and responsibilities set forth in the CEA with the City of New Orleans, as well as the receipt of public money as remuneration for such services, we find the LSPCA is functioning as an instrumentality of a municipal corporation, and is therefore subject to the Louisiana Public Records Law, La. R.S. 44:1 *et seq*. We therefore affirm the court of appeal in that regard. We further find that the reporting requirements contained

---

[8] *Amici curiae* briefs submitted to this Court assert that such a holding will have a chilling effect on private entities contracting with municipalities to provide certain services. This Court is not unaware of the necessity of governmental entities contracting out services with private groups, but we must also be ever cognizant of the public's well-established constitutional right to access information associated with public money.

in the CEA do not satisfy the Public Records Law, as the requirement for access to public records cannot be circumscribed by contract. The LSPCA is required to disclose all documents specifically related to the discharge of its duties and responsibilities outlined in the CEA with the City of New Orleans, and we remand to the district court to determine which documents satisfy that description.

**AFFIRMED AND REMANDED**.

05/03/2017

# SUPREME COURT OF LOUISIANA

## No. 2016-C-1809

## NEW ORLEANS BULLDOG SOCIETY

## VERSUS

## LOUISIANA SOCIETY FOR THE PREVENTION
## OF CRUELTY TO ANIMALS, ET AL.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
## FOURTH CIRCUIT, PARISH OF ORLEANS

**Hughes, J., dissenting in part.**

Respectfully, While I agree that the LSPCA has a duty to comply with the public records law, I believe that the scope of its response should be limited to those documents prepared and maintained pursuant to the Cooperative Endeavor Agreement.